Henry Canatsey *et al.*

*v.*

Jackson Canatsey *et al.*

*Filed at Springfield October 31, 1889.*

1. Probate of wills—*what necessary thereto.* To entitle a will to probate, four things must concur: First, it must be in writing, and signed by the testator, or in his presence by some one under his direction; second, it must be attested by two or more credible witnesses; third, two witnesses must prove that they saw the testator sign the will in their presence, or that he acknowledged the same to be his act and deed; and fourth, they must swear that the testator was of sound mind and memory at the time of signing or acknowledging the same.

2. Proof of the foregoing facts, in the absence of any proof of fraud, compulsion or other improper conduct, will make a *prima facie* case entitling the will to probate.

Appeal from the Circuit Court of Scott county; the Hon. George W. Herdman, Judge, presiding.

Mr. Owen P. Thompson, for the appellants:

As to the facts necessary to the probate of a will, see *Dickie* v. *Carter*, 42 Ill. 376.

If the attesting witness swears only to his signature, this will not be sufficient.   10 Am. Dec. 237; *Burwell* v. *Corbin*, id. 495.

When an appeal is taken from an order admitting a will to probate, the testimony of the subscribing witnesses must alone be sufficient to show due execution.   *Walker* v. *Walker*, 2 Scam. 291; *Andrews* v. *Black*, 43 Ill. 259.

When the testator is illiterate, and signs by his mark, it must appear that no imposition has been practiced, and that he did in fact fully understand every part of the paper.   *Weir* v. *Fitzgerald*, 2 Brad. Sur. Rep. 42; *Rigg* v. *Wilson*, 13 Ill. 15; *Martin* v. *Mitchell*, 28 Ga. 382; *Wampler* v. *Wampler*, 9 Md. 540; *Potter* v. *Potter*, 41 Ill. 80; Schouler on Wills, sec. 317; 1 Jarman on Wills, 29.

Mr. JAMES M. RIGGS, for the appellees:

When the attestation clause contains all the particulars of a good execution, it will be *prima facie* evidence of due execution. Mere forgetfulness of the witness, of the facts stated in the attesting clause, will not defeat the probate. 1 Redfield on Wills, (3d ed.) pp. 237-239; *Gwillim* v. *Gwillim,* 3 S., W. & I. 200; *Pearson* v. *Wightman,* 1 Mill. 336; *Jackson* v. *La-Grange,* 19 Johns. 386; *Jauncey* v. *Thorm,* 2 Barb. Ch. 40; *Lawyer* v. *Smith,* 8 Mich. 411; *Chaffee* v. *Missionary Society,* 10 Paige, 85.

In this country, the ruling in general is, that a will may be established by one, only, of the attesting witnesses, if he can testify to a compliance with the statute relating to its execution. *In the matter of Page,* 118 Ill. 578.

This court has decided that attesting witnesses need not know the instrument they are witnessing is a will. (*Dickie* v. *Carter,* 42 Ill. 386.) But if the rule were otherwise, it is proven in this case, by a perfect attestation clause, that the witnesses knew they were signing a will.

Under our Statute of Wills it is not necessary the attesting witnesses should see the testator sign the will, or see any one sign for him. It is only necessary he should acknowledge it to be his will. This is sufficiently shown by the testimony of the witnesses, and the attesting clause. *Holloway* v. *Galloway,* 51 Ill. 159.

As to the objection that the witnesses do not know the testator was present when they signed, this is squarely shown to be otherwise by McGlasson, who swears that the testator, and Rowen, the other witness, were present when the will was executed, or acknowledged, and witnessed. The same is also shown by the attestation clause.

It is not necessary the testator should have signed on the same day the attesting witnesses signed. He may have signed on a previous day, and acknowledged his signature on the day they signed, and this would be a good execution. This objec-

tion is fully met by the evidence of the witnesses in connection
with the attestation clause. *Holloway* v. *Galloway*, 51 Ill. 159.

It is not necessary the witnesses should sign in the presence
of each other, or at the same time. If the signature of the
testator was acknowledged to each of them, though at different
times, that was enough. If the rule were otherwise, however,
it is fully proven by McGlasson, and the attestation clause,
that the testator signed in the presence of the witnesses, who
signed in the presence of each other. *Flynn* v. *Owen*, 58 Ill.
111.

It is next urged, that inasmuch as the testator signed the
will by mark, it was not entitled to probate until the proponent
proved that its contents were read to him. The will is found
with his signature to it, and the presumption is that he did
not sign it without knowing its contents. Such is the usual
presumption in reference to all instruments, and we are aware
of no distinction between persons who can and those who can
not write. *Doran* v. *Mullen*, 78 Ill. 346.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

George Canatsey of Scott County died testate on March 21,
1888. By his will bearing date March 14, 1883, after pro-
viding for the payment of his funeral expenses and debts, he
devised all his personal property and real estate, the latter
consisting of 325 acres of land in Scott and Macoupin Coun-
ties, to his eight children, specifically naming three sons and
five daughters. He made no other gifts or devises, and the
eight children so named were to take the real and personal
property "share and share alike."

The will was presented for probate to the County Court of
Scott County by Jackson Canatsey, the executor, who was also
one of the sons, and was admitted to probate by that Court on
May 17, 1888. The probate of the will was resisted before
the County Court by Henry Canatsey and Ellen McCarty,
claiming to be grandchildren of the testator, children of a de-

ceased son. They are not mentioned in the will. They are described as such grandchildren in the order of the County Court admitting the will to probate. They took an appeal from such order to the Circuit Court, where a trial was had, by consent, before the Circuit Judge without a jury, resulting in an order admitting the will to probate. From such judgment of the Circuit Court the contestants prosecute their appeal to this Court.

The testator could not write. He signed the will by making his mark and affixed his seal. The only evidence introduced upon the trial before the Circuit judge, besides the will itself, consisted of the testimony of the two subscribing witnesses and of the draughtsman of the will.

It is urged by the contestants, that the proof of the execution of the will was not sufficient under the requirements of the statute. We have said that "to entitle a will to probate four things must concur—it must be in writing and signed by the testator or testatrix, or in his or her presence by some one under his or her direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator or testatrix sign the will in their presence, *or* that he or she acknowledged the same to be his or her act and deed; they must swear that they believed (or believe) the testator or testatrix to be of sound mind and memory at the time of signing and acknowledging the same." (*Dickie et al.* v. *Carter*, 42 Ill. 376; *Crowley* v. *Crowley*, 80 id. 469).

It is not necessary to say anything as to the fourth requisite, as it is not claimed that the testator was not of sound mind and memory.

*First*, the will of George Canatsey was signed in his presence and under his direction by James Callans, he at the same time making his mark. Callans swears, that he has been a practicing lawyer in Scott County seventeen years; that he knew the testator twenty five years; that he was County judge on March 14, 1883; that he wrote the will in question for George

Canatsey and signed the latter's name to it; that he never signed the testator's name without his request; that the will as shown to him on the trial was "in the exact form in which he wrote it"; that it is his recollection that he wrote it at the dictation of George Canatsey; that the testator signed his name to the instrument "by his mark"; that the will was written in the office of the witness on the south side of the square in Winchester, Scott County, and that he and the testator were present at the time; that "the old gentleman came in and had me prepare the will, and my impression is that he had some memorandum—he might have had it on the leaf of a book— my recollection is that he * * * told me what he wanted done and pulled out some papers"; that he (the witness) would not have written a will and signed George Canatsey's name to it except at the dictation of George Canatsey.

*Second,* the will is attested by two credible witnesses, Frank McGlasson, who was then and had been for twelve years clerk of the Circuit Court of Scott County, and Thomas P. Rowen, who had been county clerk eight years and county judge four years.

*Third,* the testimony of the subscribing witnesses, in the absence of any proof of fraud, compulsion or other improper conduct, made out such a prima facie case as justified the court in admitting the will to probate.

McGlasson swears, that he had lived in Scott county fifty years; that he had known the testator about twelve years; that his name was signed to the will as a witness; that the signature was unquestionably that of the witness; that the testator frequently came into the office of witness and they had talks together; that witness always called him "Uncle George"; that the best recollection of witness is, that "Uncle George or some one else came to me and asked me to go and witness his will;" that it was in the old court house "I think—I remember of the old gentleman being present; I witnessed it in his presence; I am satisfied of that because here is my signature

26—130 ILL.

to the will, * * * he most assuredly was present at the time I signed it; I think Mr. Rowen was present, and I don't know but what Mr. Callans was present; I don't know that I could say that I saw him (the testator) sign it, he acknowledged it, I am satisfied of that; I don't know just what he said, but I know that he said that it was his will, and he wanted us to attest it."

Rowen testifies as follows: · I knew the testator forty five or fifty years; I was very well acquainted with him; I never saw him write; I don't think he could write; that first signature (to the will) is mine; I wrote that first signature under that attesting clause, or at least that is my signature, and I am satisfied that I wrote it; I have written a great many wills for different parties; as county clerk and county judge I became familiar with wills, and the execution of wills and what was requisite; I never witnessed a will except at the request of the testator or some one acting for him in his presence; I never signed that will as a witness without being requested so to do either by Mr. Canatsey or some one for him in his presence; I don't remember who was present; I don't remember where it was; I suppose, though, it was in the court house; I was in the court-house every day; the testator came to town nearly every Saturday, and I generally saw him every time he came to town; he would come to the court house; either George Canatsey, or Callans, or "some one for him sure," asked me to sign it (the will); I don't remember of seeing the old man make his mark to the will; I don't remember half the wills I have written or attested; I never witnessed any instrument unless it was either signed or acknowledged by the signer in my presence."

· The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILKIN: I dissent. In my opinion the testimony of the subscribing witness Rowen, as it appears in the record, is not sufficient to entitle the will to probate under our statute.