Joseph C. Robinson *et al.*

*v.*

Eliza A. Brewster *et al.*

*Filed at Springfield March 26, 1892.*

1. WILL—*what constitutes.* A will is a disposition of one's property, to take effect at his death. An instrument by a party in which he states that in consideration of one dollar, as well as for affection, he assigns and sets over to his daughter all of his property, real and personal, to have the same after his death, is good as a testamentary disposition, and valid when properly attested.

2. SAME—*what is sufficient signing—making mark.* To entitle an instrument to probate as a will, the same must be in writing, and signed by the maker; but the signature is just as effective when the testator makes his mark as when he signs his name.

3. SAME—*attestation by witnesses.* A will must be attested by at least two credible witnesses. It is sufficient if the witnesses sign the instrument in the presence of the testator, at his request, and their names are written opposite or under the word "attest." It is not indispensable that the witnesses shall subscribe any formal clause of attestation.

4. SAME—*proof of, where one witness is dead.* One of two attesting witnesses to a will died before the will was offered for probate. The surviving witness, on the application for probate, testified that they both were present when the testator signed the instrument, and that the latter saw the testator sign it, and that it was so signed by him in the presence of both the witnesses, and it was proved that the signature of the deceased witness, as subscribed, was in his handwriting, and that the will itself was in his handwriting, and that he was present and superintended the execution of the instrument. This was held sufficient, and met the requirement of section 6 of the act relating to wills. In such case, the testimony of the surviving witness that he believes the testator was of sound mind when he signed the instrument, will suffice.

5. SAME—*statements of testator before signing.* A few minutes before the execution of a will the testator told a witness that he was making his will, and desired him to come to an attorney's office and witness it, which the witness did: *Held,* that such statement and request so shortly before the signing of the will might be regarded as a part of the *res gestæ,* and proper evidence to indicate the testator's intention to make the paper signed, his will.

6. SAME—*parol declarations of testator before and after signing.* The parol declarations of a testator made before or after the execution of

the will are not admissible for the purpose of invalidating the will. But his declarations made after the execution of the will may be sometimes admitted to show his knowledge of its contents, in cases where it is claimed that he was imposed upon by not being informed of its contents.

7. SAME—*presumption that testator knew its contents.* Where the execution of a will has been proven in the manner prescribed by the statute, it will be presumed that the testator knew its contents. The law does not require that a party executing a will shall make a declaration that it is his will.

8. EVIDENCE—*in aid of presumption—when irrelevant and harmless.* Where evidence only tends to establish that which, in the absence of proof, is a legal presumption, while it may be irrelevant, it can work no injury, in the absence of any evidence tending to overthrow such presumption. So when a will is properly executed, proof that the testator knew its contents is unnecessary, where no fraud or imposition is shown to have been practiced on him, but it can do no harm.

9. INSTRUCTIONS—*need not be repeated.* There is no error in refusing instructions when all that is material in them is expressed in those given.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. S. P. VAIL, Judge, presiding.

This is a bill filed in the Circuit Court of Macon County on April 4, 1890, by Joseph C. Robinson and Margaret McRoberts, children of Joseph Robinson, deceased, against Eliza J. Brewster and Christopher C. Robinson, also children of said deceased, and Casper Elwood, administrator with the will annexed of the estate of said Joseph Robinson, for the purpose of setting aside the will of said Joseph Robinson. Eliza J. Brewster and the administrator answered the bill, but Christopher C. Robinson failed to answer, and default was entered against him. The court directed an issue of law to be made up, whether the writing, described in the pleadings and purporting to be the will of the deceased, was his last will and testament, and, said issue having been submitted to the jury for trial under instructions from the court, a verdict was returned finding such writing to be the will of the said Joseph Robinson. Motion for new trial was overruled, and decree

rendered in accordance with the verdict, and finding that said will was duly executed, and ordering the same to be established and confirmed, and dismissing the bill as to the defendants who answered.

Joseph Robinson died testate on January 13, 1890, leaving him surviving as his only heirs at law the four children above named, and owning certain lots in Decatur and land in Macon County, and a considerable amount of personal property. On January 17, 1890, the defendant in error, Eliza Jane Brewster, produced before the County Court for probate, as the will of her deceased father, the following instrument towit: "Know all men by these presents, That I, Joseph Robinson, for the consideration of one dollar, to me in hand paid, as well as my affection, do hereby assign and set over to my daughter, Eliza Jane Brewster, all of my property, both personal and real, to have the same after my death.

"Witness my hand and seal this 7th day of May, 1877.

"Attest:                          Joseph X Robinson.    (Seal.)
"J. S. Post,                      mark.
"E. McClellan."

This instrument was then and there admitted to probate as the will of the deceased by the County Court. The proceedings upon the probate thereof show, that E. McClellan and William T. Cassius personally appeared in open Court, and swore, that they personally knew the handwriting of J. S. Post, subscribing witness to said instrument, and well knew his signature, and had frequently seen him write, and that they verily believed that the name of J. S. Post, subscribed as witness to the execution of said will, was thereto subscribed by him as such subscribing witness; and E. McClellan, the subscribing witness to said instrument, swore that he was present and saw the said Joseph Robinson sign said instrument, and that he believes that said testator was of sound mind and memory, of lawful age, and under no constraint when he signed said will.

Upon the trial before the Circuit Court, the files of the County Court, showing the said document as the will of the deceased, together with the accompanying affidavits of the witnesses as above set forth, and the oath of the administrator, were admitted in evidence. The material part of the testimony of McClellan, as introduced by the defendants upon the trial, is as follows: I am Circuit Clerk of Macon County and have been 22 years; I knew Joseph Robinson 25 years, I guess; I saw this instrument of writing in J. S. Post's office on May 7, 1877; by request of Joseph Robinson I went up to J. S. Post's office and witnessed the same; my best recollection is I was standing on the sidewalk in front of Skelly's grocery store when he made the request; at that time his mind and memory were both good; he said he was making his will and wanted me to witness it; J. S. Post was acting as an attorney; J. S. Post wrote and prepared the instrument in controversy in this case, proposed by Eliza Jane Brewster as the will of Joseph Robinson; upon that occasion I went with Robinson to Post's office for the purpose aforesaid; Robinson signed it by his mark and Post and I witnessed it; the instrument was signed by Robinson himself in the presence of Post and myself; we were all present at the same time—Robinson signed it and then Post and I signed it as witnesses; Post and I signed it as witnesses in the presence of and at the request of Robinson; that is J. S. Post's signature and I saw him write it there; that is the signature of E. McClellan and in his handwriting; when he executed this instrument Robinson's mind was sound and his business capacity was good; I had business transactions with him up to within six months of his death; I don't recollect whether the instrument was read over to him or not at that time; I knew Post for 40 years and was intimately acquainted with him; he was a practicing attorney; I have seen him write and am familiar with his handwriting; the body of the instrument is in his handwriting; he is dead—his death occurred before January 17, 1890—

about five years ago, I think; I saw Robinson make his mark to said instrument; I don't know whether Post saw Robinson sign it by making his mark or not; he was present and in a position where he could have seen him sign it; Post superintended the execution of the instrument; I can't tell whether Robinson saw me sign my name as a witness; he was in a position to have seen me sign it; we all signed it at the same time and at the same table and were within a few feet of each other during the whole transaction; Robinson controlled his real and personal property himself; it was only a few minutes after he requested me to go up to Post's office before I went up and saw him sign the paper in controversy; the instrument had been prepared previous to our going there upon that occasion; the instrument now shown me is the same which was shown to me when I testified in the County Court at the time it was admitted to probate. Upon cross-examination the witness said: Robinson could not read or write; part of the time he was a man of very intemperate habits; I don't think his habits were worse in 1877 than at other times;. I don't think he was an habitual drinker; I do not think he was intoxicated when I met him on the street; Skelly's grocery was across the street from Post's office—80 feet probably; I walked across the street with Robinson; I remained at Post's office some time talking, after I signed the paper; it was written when we got there except the signature; I think the words "Joseph Robinson, his mark" were written when we got there; I don't think it was read over to Robinson while I was there; I don't recollect that Post or Robinson said anything about the contents of the paper or about the paper having been read over to Robinson; he did not request me to sign it as a witness in the office, but on the side-walk; he did not have the paper with him when he met me on the sidewalk; this is the paper they requested me to sign when I got up in the office; I do not recollect whether Robinson said anything about this paper being his will after we got into the office; when my at-

tention was first called to this paper, my recollection of it was very indistinct; if I had not seen my signature, I could not have recalled the transaction; before April 4, 1890, I told Mr. Johns I could not remember whether anything was said to me by Robinson about this paper being a will. Upon his re-direct examination, the witness said: Robinson was all right as to sobriety when this instrument was executed; he was in a condition to transact business intelligently at that time; no persons were in the office at the time except Post, Robinson and myself; my opinion is that Robinson understood all about it; I do not pretend to say of my own knowledge that Robinson knew the contents of this paper which I signed as a witness.

The defendants examined only two other witnesses besides McClellan. One of these swore that upon one occasion Mr. Robinson was talking to her about his daughter, Eliza, and said, that a couple of months after the death of his wife he had gone up into Captain Post's office, and made out a paper, and had come home and given it to Eliza, so that after he was dead and gone, she should have all he was worth. The other witness testified, that he was upon one occasion at Mrs. Brewster's house when her father was there, and this paper was produced and read in the hearing of Mr. Robinson, and he said that it was his will and just what he had ordered.

The complainants introduced no testimony except that of three witnesses, whose evidence tends to show that Post, the attorney, had moved his office from its former location, so that in May, 1877, it was not at the place where the witness, McClellan, had located it.

The evidence other than that of McClellan tends to show, that the deceased could read what was printed, but could not write, or read what was written.

Mr. W. C. JOHNS, for the plaintiffs in error:

Parol evidence can not be admitted to explain the intention of a testator. 1 Redfield on Wills, (3d ed.) *500-502, p. 10,

and note; *Comstock* v. *Hadlyme,* 3 Conn. 254; 20 Am. Dec. 100, and note; Wigram on Wills, prop. 7; *Jackson* v. *Kniffer,* 2 Johns. 31; *Stevens* v. *Vancleve,* 3 Wash. C. C. 465; *Provis* v. *Rowe,* 13 Eng. Com. 490; *Dickie* v. *Carter,* 42 Ill. 376.

The evidence must show the testator knew the contents of the instrument, and intended it as a will. *Rosser* v. *Franklin,* 52 Am. Dec. 97; *Scribner* v. *Crane,* 21 id. 82; *Wilbur* v. *Wilbur,* 138 Ill. 446.

Mr. W. T. CASSIUS, and Messrs. BUCKINGHAM & SCHROLL, for the defendants in error:

What is a will? A will is defined to be an instrument by which a person makes a disposition of his property, to take effect after death. 1 Jarman on Wills, 26; 1 Redfield on Wills, 5; Schouler on Wills, 1; 1 Swinburn, 25.

There is no form for a will. If the intention of the maker to dispose of his estate after death be sufficiently manifested, and this intention be lawful in itself, and the instrument be executed with the statutory formalities as to subscription by the testator and attestation by witnesses, it will operate as a will, whatever its form. Beech on Wills, chap. 2, secs. 17, 18; Jarman on Wills, 34, 35; 1 Redfield on Wills, (4th ed.) chap. 6, div. 7-9; *Frew* v. *Clark,* 80 Pa. St. 178; *Badgley* v. *Votrain,* 68 Ill. 25; *Comer* v. *Comer,* 120 id. 420; *Roth* v. *Michalis,* 125 id. 325.

The testator is not required to proclaim to the witness that he is making a will, nor are the witnesses required to know that it is a will they are attesting. *In re Storey's Will,* 20 Bradw. 183; *Dickie* v. *Carter,* 42 Ill. 376.

For the evidence required, in case of death or removal of witnesses to parts unknown, to admit a will to probate, see section 6 of the Statute of Wills. One witness is enough, if he can testify to a compliance with the statute. *In re Page,* 118 Ill. 576.

To admit a will to probate, nothing but the formal execution need be proved, and that the maker was sound of mind and memory at the time. (*Yoe* v. *McCord*, 74 Ill. 33.) It need not be shown that the testator knew contents. Knowledge is presumed by execution. This is true even where the testator signs by his mark. *Doran* v. *Mullen*, 78 Ill. 342; *Canatsey* v. *Canatsey*, 130 id. 397; *Keithley* v. *Stafford*, 126 id. 507; 1 Redfield on Wills, 568, note 61.

On a question whether the maker knew the contents of the will at time of executing the same, his subsequent declarations are heard. 1 Redfield on Wills, (4th ed.) chap. 10, sec. 3, p. *567; 7 Am. and Eng. Ency. of Law, p. 73. .

A formal attestation clause is not necessary. (Beach on Wills, p. 65.) The clause may consist of a single word, as "witness," "test," or "attest," or there may be no words at all. 1 Redfield on Wills, chap. 6, div. 6, p. *231, note 14.

Irrelevant or incompetent evidence introduced to prove what the law presumes, or what has already been sufficiently established, will not reverse. *Powell* v. *McCord*, 121 Ill. 330; *In re Will of Bonse*, 18 Bradw. 433.

Mr. Chief Justice Magruder delivered the opinion of the Court:

*First,* as to the execution of the instrument admitted to probate as the will of Joseph Robinson, deceased. There is a concurrence of the four requisites which have been held to be necessary in order to entitle a will to probate. (*Canatsey* v. *Canatsey*, 130 Ill. 397). 1. The instrument is in writing and was signed by Joseph Robinson. McClellan swears, that he saw Robinson make his mark, and a signature is just as effective where the testator makes his mark, as where he signs his name. (*Doran* v. *Mullen*, 78 Ill. 342). 2. The instrument is attested by two credible witnesses, McClellan and Post. The subscribing witnesses signed the instrument in the presence of Robinson and at his request, and their names are written

opposite or under the word "attest." It is not indispensable that the witnesses should subscribe any formal clause of attestation. (1 Redf. on Wills—4 ed.—page 232, sec. 6, and note 14). 3. McClellan, one of the subscribing witnesses, swears, that he and Post, the subscribing witnesses, were present when Robinson signed the instrument, and that he, McClellan, saw Robinson sign it, and that it was so signed by him in the presence of the two subscribing witnesses. The two subscribing witnesses do not declare on oath in this case that they were present and saw the testator sign the instrument in their presence, because one of them died before the will was admitted to probate in the County Court. But section 6 of the Act in regard to Wills provides, that "in all cases where any one * * * of the witnesses to any will * * * shall die * * * so that his * * * testimony cannot be procured, it shall be lawful * * * to admit proof of the handwriting of any such deceased * * * witness, * . * * and such other secondary evidence as is admissible in courts of justice to establish written contracts generally, in similar cases." Here, it was proven that the signature of J. S. Post, as subscribed to the instrument, was in the handwriting of said Post, and that the instrument itself was in his handwriting, and that he was present and superintended the execution of the instrument. We think that the proof required by section 6 was furnished, and that, under that section, the will was as much entitled to probate, as though the deceased witness had been present. 4. It is proven by the testimony of McClellan that he believes Robinson to have been of sound mind and memory when he signed the instrument. We are of the opinion that the execution of the instrument was properly established by proof.

*Second,* it is claimed by the plaintiffs in error, that the court below erred in admitting evidence of the declarations of the testator, made before, and subsequent to, his execution of the instrument in question. It is also claimed, that the court

42—140 ILL.

erred in instructing the jury that the presumption of the testator's knowledge of the contents of the instrument arising from the fact, that he signed it, might be considered by them "in connection with all the other evidence in the case in determining the question as to whether he actually knew the contents of the paper at the time he executed it."

The parol declarations of a testator made before or after the execution of the will cannot be admitted for the purpose of invalidating the will. (*Dickie* v. *Carter*, 42 Ill. 376). It has been held, however, that declarations of a testator made subsequently to the execution of a will may sometimes be admitted merely for the purpose of showing his knowledge of its contents in cases where it has been charged that he was imposed upon by not being informed of such contents. (1 Redf. on Law of Wills—4 ed—page 567, chap. 10, secs. 14 and 15). In the present case, we think that the evidence of such declarations might well have been omitted, but we do not think that they could have done the complainants any harm. Where the execution of a will by the testator is proven, as was done in this case, in such manner as the statute prescribes, it will be presumed that the testator knew its contents. (1 Redf. on Law of Wills—4 ed—pge 567, chap. 10, sec. 14, note 61). Our statute of Wills does not require that the party executing a will shall make a declaration that it is his will. (*Dickie* v. *Carter, supra*). In this case, however, the proof does show, that the testator told McClellan he was making his will and wanted McClellan to witness it. The paper in controversy was produced to McClellan a few minutes after he was asked to go to Post's office to witness a will. It is true, that the instrument was not read over to Robinson at the time of its execution, nor did he then formally declare in words that it was his will. But it is not necessary to prove that the testator knew the contents of the will. Such knowlege is presumed from the fact of his execution of it. (*Doran* v. *Mullen, supra; Keithley* v. *Stafford*, 126 Ill. 507).

In the case at bar, the complainants introduced no proof whatever to rebut the presumption of knowledge arising from the execution of the instrument.  If, therefore, the evidence of subsequent parol declarations tending to show knowledge of its contents had not been introduced, the jury would have been justified in finding that Robinson knew the contents of the paper from the fact that he signed it.  The evidence of the declarations was merely cumulative and in aid of the presumption arising from the execution.  There is no proof that any fraud or imposition was practiced upon Robinson, or that anything was done to conceal from him the nature or meaning of the instrument which he was signing.  Where testimony only tends to establish what, in the absence of proof, is a legal presumption, it may be irrelevant, but it can certainly work no injury in the absence of any proof tending to rebut or overthrow such presumption.  (*Powell* v. *McCord*, 121 Ill. 330; *In re Will of Dorothea Bonse*, 18 Brad. 433).

*Third*, as to the form of the instrument.  "A last will and testament may be defined as the disposition of one's property to take effect after death." (1 Redf. on Law of Wills,—4 ed— page 5, chap. 2, sec. 2, par. 1).  The instrument in controversy is a disposition of property to take effect after death. It is testamentary in character and wholly executory.  The daughter was not to have or become the owner of the estate until her father's death.  The vesting is deferred both in interest and possession until the death of the maker.  The statement to McClellan, that he was making his will and the request to McClellan that he come and witness the will, made as such statement and request were only a few moments before signing the paper so as to be really a part of the *res gestæ*, indicate that it was Robinson's intention to make this instrument his will.  (*Frew* v. *Clarke*, 80 Penn. State Rep. 170; *Johnson* v. *Yancey*, 65 Am. Dec. 646; 20 Ga. 707; *Badgley* v. *Votrain*, 68 Ill. 25; *Olney* v. *Howe*, 89 id. 556; *Roth* v. *Michalis*, 125 id. 325; *Comer* v. *Comer*, 120 id. 420).

*Fourth,* the instructions given conform to the views herein expressed. The only one of the given instructions, which is complained of, has already been noticed. Counsel for plaintiffs in error urge it as error, that the court below refused to give instructions numbered 5 and 6 asked by the complainants. Upon a careful comparison of these refused instructions with those that were given, as they are set forth in the record, we find that all which is material in the former is expressed in the latter.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*