HENRY BRAND *et al.*

*v.*

WILLIAM F. HENDERSON *et al.*

*Filed at Springfield June 14, 1883.*

| | |
|---|---|
| 107 | 141, |
| 121 | 340 |
| 107 | 141 |
| 159 | 641 |
| 107 | 141 |
| 167 | 396 |
| 107 | 141 |
| 173 | 226 |
| 107 | 141 |
| 98a | 4594 |
| 107 | 141 |
| 205 | 5104 |
| 107 | 141 |
| 112a | 6287 |

1. EVIDENCE *in explanation of contract—prior conversations, etc.,— as, in case of an alleged gambling contract.* In an action to recover the price of wheat bought by the plaintiff, as factor, for the defendant, for future delivery, where the defence was that the transaction was a gambling contract, no delivery being intended, but only an adjustment of differences in price, it was *held.* error to refuse to let the defendant testify as to conversations had by him with the plaintiff before the orders for the purchases were actually given, as throwing light upon the nature of the contract, it not being the last words spoken that in all cases give character to the transaction.

2. A verbal contract may be explained by facts, circumstances or conversations which shed light upon the meaning of its words. In such case it is proper to ascertain such extrinsic facts as the parties may have had in view at the time the contract was made, in order to obtain the true meaning of its words.

3. So where a defendant in such case had given his broker an order to buy for him a lot of grain for future delivery, to be purchased on the board of trade, the transaction being alleged to be a gambling contract, it was *held,* to be error to refuse to let the defendant, when sued on his alleged purchase, answer the question as to what was said at the time the order was given about how the deal was to be settled.

4. PRINCIPAL AND AGENT—*liability of the former to the latter on purchases made—as, in case of a commission merchant buying grain for another.* Where an agent or commission merchant purchases grain for his principal on his order to do so, he can only recover of the latter his commissions, unless he has actually paid for the grain, or the loss legally sustained by the seller, in which event he may also recover what he has thus been required to pay. It is not sufficient that the agent purchasing may be legally liable, but he must have sustained damage by actual payment.

5. PLEADING AND EVIDENCE—*recovery under the common counts.* No recovery can be had upon an executory contract under the common counts. Where goods sold have not been delivered and accepted, no recovery can be had for the price, even under the count for goods bargained and sold, unless it appears there has been a complete sale, and the property in the goods had been vested in the defendant by the sale, and an actual acceptance by him.

6. It is only when the contract has been fully performed, and nothing remains to be done but the payment of the money, that the common counts are applicable. If the purchaser refuses to accept the goods when tendered, or offered to be delivered, the contract must be specially set out in the declaration.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. F. BOOKWALTER, and Mr. J. W. JONES, for the appellants.

Messrs. MANN, CALHOUN & FRAZIER, for the appellees.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

W. F. Henderson & Co. were grain factors, residing at Danville, in this State. They ostensibly bought and sold grain on the board of trade at Toledo, and for parties residing at Danville and vicinity. They dealt through other factors, or commission men, in Toledo, who were members of that board. In the latter part of November, and early part of December, 1880, they received orders from Brand & Head, the defendants, to buy for them 20,000 bushels of No. 2 red wheat, to be delivered to them at Toledo, at any time during the month of January following, and immediately gave orders to their correspondents at Toledo to buy accordingly. There is evidence in this record tending to show that at the time this wheat was ordered it was understood by Brand & Head that the wheat was never to be delivered to them, but that the difference between the market price at Toledo at the time of such contract of purchase, and the market price at the time limited in January, was only to be settled and paid by the one to the other, as the profit or loss should be,—and there is some evidence tending to show that Henderson & Co. so understood the proposed transactions when they received the orders of their principals, and there are proofs strongly

contradicting this latter proposition. Wheat of that grade declined, so that in January the price was less .than the market price when the orders were given. By arrangement between the parties on December 9, 1880, after the orders to buy were given, it was agreed in writing that the wheat should not be delivered, but that the loss on the deal should be paid to Henderson & Co. on January 31, 1881, together with one-half cent per bushel for commissions.

The matter ran along, and Brand & Head finally refused to settle the losses. Thereupon, Henderson & Co. made arrangements in Toledo with their correspondents to draw upon them for the sum of $21,000, and to send the draft, with warehouse receipts attached for 20,000 bushels, to the First National Bank at Danville, with directions to deliver the receipts upon payment of the draft. Henderson & Co. not having the money, made arrangements with the bank to loan them the warehouse receipts, upon giving indemnity to the bank for their return if they did not procure the money therefor. Thereupon they took the warehouse receipts so loaned to them and tendered them to Brand & Head, the defendants, and demanded the payment therefor of the sum of $21,000. Brand & Head refused to accept the same, or to pay therefor. Henderson & Co. then returned the receipts to the First National Bank, and the same were returned to the bank in Toledo.

There is evidence tending to show that the warehouse receipts were borrowed for the purpose, of the bank in Toledo, and that thus even the commission men in Toledo did not own them. There is no proof that Henderson & Co. ever owned these warehouse receipts, other than the fact of borrowing the same, nor is there any evidence tending to show that any wheat was ever, in any other way, delivered to them, or that any wheat or warehouse receipts were ever paid for by them in fulfillment of this contract, or by reason thereof. There is no evidence tending to show that Henderson & Co.

ever paid anything to any one on account of such supposed contract of purchase, or that they ever lost anything by reason thereof, in any mode whatever. .

This is an action in assumpsit by Henderson & Co. against Brand & Head. They filed a declaration containing only the common counts. The defendants pleaded the general issue, and gave notice thereunder that they would give in evidence, and insist upon the trial, that the supposed cause of action against them was for losses incurred in dealings in options; that the intention and understanding of both parties, plaintiff and defendant, was that no wheat, in fact, was to be delivered, and that differences in the rise and fall in the market were to be settled and paid, the one to the other, as the case might be, and that such contract was a gambling contract, and in violation of the statute, and was void. On trial of this issue the verdict was for plaintiffs for $1365, and judgment was entered upon the verdict. That judgment was affirmed in the Appellate Court, and defendants appeal to this court.

We have no power on this appeal to review the findings of fact, but in order to decide the questions of law presented to us, it is necessary that we should look into the issues, and also the evidence, so far as to ascertain what it tends to prove.

We think it was error to refuse to let the defendants testify as to conversations held between the defendants and plaintiffs before the orders in question were actually given, which may have led up to these orders, and which may have shed light upon the character of the transactions. The plaintiffs testified that one of the defendants came in and said: "Buy for me 10,000 bushels more January wheat." It would seem that some previous understanding was had between the parties in regard to such transactions. It was certainly permissible to prove any previous conversations tending to explain what was meant by such order. "The affairs of men consist

of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others, and each, during its existence, has its inseparable attributes, and its kindred facts materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances constituting part of the *res gestæ*, may always be shown to a jury along with the principal fact." (1 Greenleaf's Evidence, sec. 108.) It is not alone the last words spoken or written that in all cases give character to a transaction. A promissory note containing usurious interest, or made upon a fraudulent consideration, or for a gambling debt, may be explained, or even contradicted, by showing previous facts out of which it grew. (*Hewitt* v. *Dement,* 57 Ill. 500; 1 Greenleaf's Evidence, sec. 284, and note.) Why, then, may not a verbal contract, alleged to be a gambling contract, be explained by facts, circumstances or conversations, which shed light upon the meaning of its words? It is, in such case, proper to ascertain such extrinsic facts as the parties may have had in view at the time the order for the contract was made, in order to obtain the true meaning of its words. (*Doyle* v. *Teas,* 4 Scam. 202.) It is clear that the court erred in refusing to let one of the defendants answer the question as to what was said at the time the order was given about how the deal was to be settled.

But the error that goes to the basis of the action is that involved in the first instruction given for the plaintiff. It is as follows:

"If the plaintiffs, at the request of the defendants, or either of them, bought for defendants, in Toledo, 20,000 bushels of wheat at the then market price, to be actually delivered in January, 1881, at Toledo, Ohio, and became responsible to the seller for the same, and in January, 1881, were ready to

deliver the wheat; or if the defendants, or either of them, requested said plaintiffs to carry said wheat beyond January, and plaintiffs did so, and afterwards, in March, tendered to defendants, or either of them, *warehouse receipts* of Toledo warehouses for 20,000 bushels of wheat of the same quality so ordered bought by the defendants, and defendants refused to accept said receipts, on the ground they did not mean to pay for the wheat, then the plaintiffs are entitled to recover of the defendants the difference between the price at which said wheat was bought and the market price in Toledo of the wheat on the day it was so tendered."

The instruction rests on the hypothesis that plaintiffs were acting as the agents of defendants. The record fully sustains the assumption of this hypothesis. The jury are told that if the plaintiffs bought as such agents, and became responsible to the seller for the price of the wheat, plaintiffs, without proving that they ever paid one cent for the same, might recover the difference between the purchase price and the market price on the day of tender. Such is not the law. All that the agent is entitled to recover is his commissions, unless he shall receive an actual damage by the default of the principal. If the agent not only became legally liable, but actually paid for the wheat so purchased by him, or at least paid for the loss legally incurred by the seller, then he may recover of his principal such amount. The agent can not make a profit out of his principal. He can recover nothing but his commissions until he has paid something.

The plaintiffs, under this instruction, need not show that they have lost a dime under this contract. Why, then, should they recover this large sum? All know that it is a fundamental rule that a party can not recover more than a compensation equal to his loss by any injury he may have sustained, except where punitive damages are permitted. The plaintiffs may, upon the hypothesis assumed, have a

complete defence to any action by the seller. If judgment were obtained against the plaintiffs by the seller, they may never pay it. They must first pay, as a guarantor of a note must first pay before he has a cause of action against his principal. Should defendants pay this judgment, and the plaintiffs fail to pay the seller of the wheat at Toledo, the seller may choose to sue and collect his damages of these defendants, who are the principals, and these defendants would then pay the claim twice, if this judgment should stand and be enforced.

. A recovery on the case stated in the instruction was not admissible under the common counts. The contract between the plaintiffs and defendants was never performed. It was entirely executory. The title to the wheat never vested in the defendants. In the case stated in the instruction no money was paid out by plaintiffs for use of defendants. There is no count for goods bargained, sold, and offered, but not received. For such a cause of action the count must be special. "If there has been no delivery of the goods, even the count for goods *bargained* and *sold*, (not showing a delivery,) can not be maintained, unless it appears that there has been a complete sale, and the property in the goods had become vested in the defendant by such sale, and an actual acceptance of the commodity by the defendant." (1 Chitty's Pleading, 347; *Seckel* v. *Scott*, 66 Ill. 106.) A tender of goods, or offer to deliver the same, is not sufficient, under such circumstances. The contract must be specially set out, and the damages can not be recovered under the common counts. (*Outwater* v. *Dodge*, 7 Conn. 87.) Where suit is for the recovery of damages for breach of contract, the count must be special. If he recovers, it is for the damages he has sustained by the breach of the contract. (*Burnham* v. *Roberts*, 70 Ill. 24.) It is only where the contract has been fully performed, and nothing remains to be done but the payment of the money, that the common counts are applicable. (*Throop*

v. *Sherwood,* 4 Gilm. 92.) "In such a case as this the declaration should be framed specially on a contract for not accepting the goods, or for refusing to complete the bargain." 1 Chitty's Pleading, *347, note.

For these reasons the judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*