## GEORGE W. POWELL

*v.*

## JOSEPH T. McCORD.

*Filed at Ottawa June 17, 1887.*

1. APPEAL—*reviewing questions of fact.* The affirmance of a judgment of the circuit court, by the Appellate Court, settles every question of fact against the party appealing therefrom, including all those depending upon the inferences or deductions to be drawn from the evidentiary facts.

2. EVIDENCE—*whether a fact is admitted by an attempt to prove it.* Evidence offered by one of the parties in a suit to prove a specified fact, and ruled out on the objection of the other, can not be relied on by the latter as proof, or the admission of anything.

3. SAME—*relevancy—as, where a question of indebtedness alone is in-volved, to show that one of the parties employs convict labor.* On the trial in an action involving the question of an indebtedness between the parties, and whether certain transactions involved gambling contracts for the purchase and sale of grain not expected to be delivered, the defendant, on cross-exam-

ination, was asked if he was not then employing convict labor, and how many convicts, and he answered that he was,—from one hundred and seventy-five to two hundred: *Held*, that the questions were highly improper, and had no relevancy to the case, and should not have been allowed.

4. PRACTICE—*mode of objecting to evidence and preserving exception.* A party must object to the asking of improper and irrelevant questions, and to evidence offered, so as to afford the trial court an opportunity of passing on the objection, before he can assign for error the propounding of such questions and the answers thereto. It is not sufficient to state, on the trial, that he saves the point on each of the questions, and that each one is over-ruled, and exception taken. The objection must be brought to the attention of the court.

5. BILL OF EXCEPTIONS—*taken as true.* If the bill of exceptions fails to show that a party objected to certain evidence or questions, and that the court overruled the same, he should, in the trial court, have the record thereof corrected in accordance with the facts, otherwise this court can not know of the fact of such objection and exception.

6. COMMISSION MERCHANT—*right to be reimbursed for advances, etc.* If a customer employs a commission merchant in a city to buy or sell grain for him on the board of trade, in pursuance of which employment the commission merchant pays out money or incurs liability for his principal, he will be entitled to be reimbursed the sum he may have paid for the latter, and this without regard to the fact of any rule of the board of trade requiring the agent to make such payment.

7. SAME—*settlement for advances, etc.—amount due as a consideration for promissory notes given therefor.* Where a commission merchant is employed to buy and sell grain on the board of trade for another, not to enter into gambling contracts or speculate in differences in the price of grain, and does in good faith actually buy and sell grain for his principal, and on his orders, at the market prices, and in so doing pays out money and incurs liability, under his contracts, for the principal, such advances and liabilities incurred by the agent will form a good and sufficient consideration for promissory notes of the principal given to settle the same, and such notes will be binding obligations.

8. ERROR WILL NOT ALWAYS REVERSE—*admission of irrelevant testimony.* The admission of merely irrelevant evidence against a party, or such as tends to prove what the law presumes in the absence of evidence, is not such error as to call for a reversal, it working no injury.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

Mr. I. K. BOYESON, for the plaintiff in error:

The purchases of grain being merely gambling contracts, there being no delivery and acceptance expected or intended, the defendant in error, who made the contracts for the plaintiff in error, had no lawful right to charge any commissions; and the contract to purchase the grain being void, the defendant in error had no right to pay any differences and charge such payments to the plaintiff, and therefore there was no valid consideration for the notes given by the plaintiff in error to the defendant in error in settlement of such illegal charges.

Although the burden of showing a want of consideration of the notes may be on the plaintiff in error, still, when it is shown that the broker paid only a portion of the money which he had charged, and for which the notes were given, the broker must show how much he has paid for the plaintiff in error. He can only recover what he has actually paid. *Brand* v. *Henderson,* 107 Ill. 141.

McCord does not furnish a single item of cash expended by him for the plaintiff in error. He admits in his evidence that he has paid only a part of his liability on the purchases.

The court erred in allowing the defendant in error to prove on cross-examination of the plaintiff in error, that the latter employed convict labor. That fact was wholly irrelevant to the issues, and was highly calculated to prejudice plaintiff in error before the jury, and it should not have been allowed. *Hennies* v. *Vogel,* 87 Ill. 244.

The instructions given on the part of defendant in error were misleading and erroneous. There was no evidence of the rules of the board of trade. They were in direct conflict with the law as laid down in *Brand* v. *Henderson,* 107 Ill. 141.

Messrs. BISBEE, AHRENS & DECKER, for the defendant in error:

It is claimed by the plaintiff in error that the facts show an intention to settle on differences, merely, and that neither

party had the ability or intention to receive the actual grain. The intention of these parties is one of fact, which has been found by the Appellate Court in favor of the judgment, and hence will not be inquired into by this court.

This case is not like *Brand* v. *Henderson*, 107 Ill. 141. There the action was brought on the account, before the broker had paid the loss. Here McCord, by executing Powell's order, became a guarantor of Powell's debt, and such guaranty and liability was certainly a consideration for the giving of the notes. (1 Daniell on Neg. Inst. secs. 183, 185.) The commissions earned by McCord, and due him, also entered into the consideration of the notes.

The defence of partial failure of consideration must be specially pleaded. *Keith* v. *Moffitt*, 38 Ill. 303.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Assumpsit was brought by defendant in error, against plaintiff in error, upon four promissory notes executed by plaintiff in error, amounting, in the aggregate, to $3500, two of them payable to the order of S. A. Downer, and the other two to the order of J. C. McCord, and all endorsed to defendant in error. Plaintiff in error pleaded the general issue, and several special pleas, alleging, in substance, that the consideration for which the notes were given was wholly illegal, in that it was the settlement of losses under contracts for the purchase and sale of wheat and corn, upon the board of trade in Chicago, for future delivery, and that it was, at the same time, expressly agreed between them that they should neither receive nor deliver any article purchased or sold, but should simply adjust such contracts on the differences, or profits or losses, etc. Replications were filed tendering issues upon the pleas, which were joined. Upon the trial, the jury returned a verdict for the defendant in error, and the court, after overruling a motion by plaintiff in error for a new trial, gave judgment upon this verdict. That judgment was, on error to

the Appellate Court for the First District, affirmed, and the present writ of error brings the last named judgment before us for review.

It is agreed by the parties in their respective statements, that in 1881 John C. McCord was doing business in Chicago in the grain and provision commission business, on the board of trade, in the name of McCord & Co. In the fall of 1881, one Fred Gould had an office at Valparaiso, Indiana, and there received orders for the purchase of grain, provisions, etc., on the board of trade, in Chicago, which he telegraphed to McCord & Co. at Chicago, who made the requisite purchases or sales on account of the persons for whom the orders were sent. The parties, however, do not agree what relation existed, during that time, between McCord & Co. and Gould, plaintiff in error affirming, and defendant in error denying, that it was that of principal and agent, and there was some evidence tending to sustain each contention. Plaintiff in error testified that it was agreed between him and McCord that their deals would not be in "cash grain," by which was meant they would not deal in grain to be actually delivered by the seller to the buyer, and paid for by the buyer, but would only deal in future options, settling on the differences between the prices of purchase and the prices of the commodities on the board of trade when the transactions were closed. McCord testified, denying that this was the agreement. Plaintiff in error sent orders to McCord, through Gould, directing the purchase and sale of corn and wheat, etc., and in October, 1881, on a settlement then had between McCord and plaintiff in error, the former claimed that the latter owed him, on account of balances and commissions in these transactions, $7101.83. McCord threw off all above $7000, and plaintiff in error then gave him, on account thereof, two drafts, one for $2000, and the other for $5000, but McCord being unable to collect these, subsequently compromised with plaintiff in error by taking $1000 in money,

and three promissory notes, aggregating $4000. One of those notes was discounted by S. A. Downer, and the two notes now in suit, payable to him, were given in lieu of it, and the other two notes now in suit are the remaining two thus given to McCord. Plaintiff in error denies that any grain was, in fact, ever bought by McCord to be delivered to plaintiff in error, and avers that this balance simply represents differences in market values between the dates of the orders and the dates of "closing out the deals." McCord testified that the grain was, in fact, bought, and was represented by warehouse receipts, which he was ready to deliver, as directed by plaintiff in error.

The finding of the Appellate Court settles every question of fact against plaintiff in error, and this includes all questions depending upon the inferences or deductions to be drawn from the evidentiary facts. (*Sun Mutual Ins. Co.* v. *Saginaw Barrel Co.* 114 Ill. 99; *Illinois Central Railroad Co.* v. *Haskins,* 115 id. 300; *Wrought Iron Bridge Co.* v. *Commissioners of Highways,* 101 id. 518; *Edgerton* v. *Weaver,* 105 id. 45.) And on this ground, we are relieved from inquiring whether the evidence proves that defendant in error has paid out money for plaintiff in error, or contracted to pay it, as questioned by plaintiff in error. We will, however, observe, because of contentions here urged, and in order that future misapprehension may be avoided, although, in the view we take, not necessary to the present decision, that the burden of the defence is here on the plaintiff in error, and that evidence offered by the defendant in error to prove a specified fact, and ruled out on the objection of the plaintiff in error, can not be relied on by plaintiff in error as proof or the admission of anything.

Plaintiff in error objects that the trial court erred in admitting evidence, against his objection, that he was, in his business of manufacturing, using convict labor. The record recites that the following occurred, in this respect, in the cross-examination of plaintiff in error:

Q. "You are manufacturing, where?

A. "Michigan City.

Q. "You have the convicts of Michigan at work for you?

A. "I have some of them.

Q. "About two hundred and fifty?

A. "No, sir.

Q. "How many?

A. "I don't know what the number is, now.

Q. "Guess at it, then.

A. "From one hundred and seventy-five to two hundred.

Mr. Boyesen—"I save the point on each of these questions. Each one is overruled, and exception.

Mr. Bisbee—"You, then, you say that the point in doing this trading up here was to make some money?—that was your object?

A. "It was."

This is all that the record shows. It nowhere appears that the court ruled on these questions, or that they were called to the attention of the court.

The questions were highly improper; they had no relevancy to any question before the court; their answers had no tendency to contradict or impeach the witness, and their only purpose was to appeal to the prejudices of the jury, and thereby affect, improperly, the action of the jury as against plaintiff in error. Had the attention of the court been called to these questions and the objections to them, the objections should have been promptly sustained, and the jury informed that the questions were irrelevant. But the court was entitled to an opportunity to pass upon them. It is not admissible that counsel can lie by and knowingly permit error to get into the record, without bringing it to the attention of the court, and then afterwards assign it for error.

Counsel say that the record is not accurately made up, in this respect,—that he, in fact, objected at the time, and the court overruled his objection. If this be so, then he should,

in the trial court, have corrected the record. We can only know what the record discloses. A recital in the record that the *counsel* assigning error *said*, at the time of the giving of obnoxious evidence by the witness, that the court overruled his objection,—there being nothing therein showing that the court heard and assented to his remark,—is not the equivalent of a recital that *the court* overruled his objection.

Objection is also made to the irrelevancy of the testimony of Ten Broek. His evidence was to the effect that he had made an arrangement for McCord with a bank, to overdraw his account, until he could obtain warehouse receipts of grain to deposit, in order to meet his purchases. Concede that it was irrelevant, still we are unable to perceive how it could have seriously prejudiced plaintiff in error. In effect, the testimony only tended to establish what, in the absence of proof, was the legal presumption, namely, that McCord was able to perform his contracts.

Objection is also urged to Hill's testimony, but the record fails to show that any objection was taken to this testimony upon the trial.

The court, at the instance of the defendant in error, instructed the jury as follows:

"The court instructs the jury, that this is an action brought by Joseph T. McCord, the plaintiff, against the defendant, Powell, to recover the amount due upon the notes offered in evidence; and if the jury believe, from the evidence, that the defendant, Powell, employed said John T. McCord to purchase and sell grain on the board of trade in the city of Chicago, not to enter into gambling contracts or speculate in differences in the price of grain, and that said John T. McCord, as such commission merchant, did actually, and in good faith, buy and sell such grain in the open market upon the Chicago board of trade, and at the market price, upon the orders of the defendant, and that by reason thereof said John T. McCord was, by the rules and regulations governing said board of

22—121 ILL.

trade at that time, obliged to pay and did pay out money or incur liability by reason of such undertaking, and did earn a commission for doing such business, and that the commission charged was reasonable, and that such trading was not illegal or in violation of any statute of this State, and such losses and commissions have not been paid, settled or adjusted, then the plaintiff is entitled to recover of the defendant in this suit the face of said notes, together with interest thereon, according to the terms of said notes. And the court further instructs you, that in determining the question of whether or not the business between the said John T. McCord and said defendant was gambling, you will be governed by the following instruction:

"The jury are further instructed, that with reference to the defence of gambling, it makes no difference, in law, what the secret intention of the defendant, Powell, was with relation to settling his purchases and sales by the payment of the differences before the maturity of the contract, unless that intention was communicated to the said John F. McCord or his agent; and if you believe, from the evidence, that neither said John F. McCord nor his agent had knowledge or information of the intentions of the defendant in relation to the settlement, then such defence will not avail the defendant; and if you so find, from the evidence, and if you further find, from the evidence, in all other respects, the orders were given and faithfully executed, and the losses paid out by said John T. McCord, and incurred by him, and included in said notes, as claimed by the plaintiff, then your verdict should be for the plaintiff, for the amount of said notes, with interest theron, according to the terms of said notes."

It is objected by plaintiff in error that there is error here, because, first, the rules of the board of trade were not in evidence; second, the instruction tended to mislead the jury, in that it told them, that whatever the rules of the board of trade might be, if McCord paid out money or incurred liability under those rules, he could recover the face of the notes.

sued on; third, that there is no evidence that McCord paid out any money whatever; fourth, that the second instruction is defective and misleading, in that it leaves out of consideration what McCord's intentions were with regard to the transactions. In our opinion, neither of these objections is tenable.

*First*—Suppose that the words, "by the rules and regulations governing said board of trade," be omitted, will the sense be impaired? We think not in the slightest. The reading will then be, "and if the jury believe, from the evidence, that the defendant, Powell, employed said John T. McCord to purchase and sell grain on the board of trade in the city of Chicago, not to enter into gambling contracts or speculate in differences in the price of grain, and that said John T. McCord, as such commission merchant, did actually and in good faith buy and sell such grain in the open market upon the Chicago board of trade, and at the market price, upon the orders of the defendant, and that by reason thereof said John T. McCord was  *  *  *  obliged to and did pay out money or incur liability by reason of such undertaking, and did earn a commission for doing such business," etc. Manifestly, the reason why he was obliged to pay out money, under these circumstances, was of no consequence. It is sufficient that he did so, and that it was within the purview of his contract. Clearly, if plaintiff in error employed defendant in error to buy and sell grain for him, and defendant in error, in complying with that contract, paid out money or incurred liability .for plaintiff in error, he is entitled to be reimbursed the amount, whether, under the circumstances, there was a rule of the board of trade requiring the payment or not. The requirement of the board of trade that he should pay the money, neither detracts from nor adds to the legal liability resulting from such a compliance with such a contract.

*Second*—The instruction does not assume that any money may have been paid out under the rules of the board of trade, except under the facts recited, and so it is impossible that an

improper state of case for the payment of money can be within reasonable contemplation.

*Third*—There is evidence tending to show that McCord paid out money, on these transactions, for plaintiff in error,—how much, is not important, since its weight was for the jury. Moreover, the evidence is undisputed, that McCord, in complying with the orders of plaintiff in error, incurred individual liability for the value of the grain he purchased, and that liability is a sufficient consideration for these promissory notes. (1 Daniell on Negotiable Instruments, secs. 183-185.) There is no question, here, as in *Brand et al.* v. *Henderson et al.* 107 Ill. 141, whether an agent can recover, in an action of assumpsit, from his principal, on account of purchases made for his principal, for which the agent is liable to pay but has not paid,—the question is, only, whether the fact that the agent has incurred liability to pay, is a good consideration for the promise of the principal to pay the agent the amount for which he has thus incurred liability.

*Fourth*—What is called by counsel "the second instruction," is, in truth, but an additional paragraph, and must be construed in connection with what precedes, which is, "that John T. McCord did actually and in good faith buy and sell in the open market," and that such buying and selling "was not illegal or in violation of any statute." This paragraph is directed to the evidence of plaintiff in error with reference to his intention in making the contract, only.

The phraseology of the instruction is not so concise and perspicuous as we could desire, yet we do not think it could have misled the jury, and especially so when read, as it was, in connection with the instructions given on behalf of the plaintiff in error, immediately following it, in which the law, on the construction of the evidence contended for by plaintiff in error, was clearly and fully stated.

We find no cause to disturb the judgment below. It is therefore affirmed.                                    *Judgment affirmed.*