## THE CONSOLIDATED COAL COMPANY

*v.*

## JOSHUA S. PEERS *et al.*

### *Filed at Mt. Vernon June 19, 1894.*

1. CONTRACT—*rule of interpretation.* The great rule for the interpretation of covenants is, to so expound them as to give effect to the actual intent of the parties, collected, not from a single clause, but from the entire context. The scope and end of every matter are to be considered, and if these be satisfied, then is the matter itself and the intent thereof also satisfied.

2. SAME—*liquidated damages.* If, from the nature of the contract, the damages can not be calculated with any degree of certainty, or if there are peculiar circumstances contemplated by the contract, the stipulated sum will be held to be liquidated damages.

3. MINING LEASE—*construed as to time of payment by the lessee.* A declaration alleged that by the terms of a mining lease the lessee agreed to begin mining coal within twelve months from its date, and to guarantee the lessor a yearly royalty of not less than $1200 after the expiration of twelve months from the date, and that if, after the expiration of one year, no coal should be mined, the lessee should pay monthly installments of $100 on its guarantee of $1200 a year, and said payments should be considered as advanced royalty; and said lessee was to have the right to mine coal sufficient to make the amount of coal mined equal to the amount of royalty paid, provided the royalty should not be less than $100 per month. The royalty to be paid was three-eights of a cent per bushel, and it was alleged that such royalty should be paid monthly, on the 20th day of the month, for coal mined the preceding month: *Held,* that the word "royalty" applied not only to the three-eighths of a cent per bushel to accrue from coal actually raised, but also to the monthly payments of $100 to accrue upon the guaranteed yearly royalty of not less than $1200.

4. SAME—*whether a lease or mere license.* An instrument under seal which invests the grantee or lessee with the "sole and exclusive right" to mine, and operate in coal, on certain lands, which grant is not limited to any particular vein or stratum, but extends to all coal under said land, and reserves an annual rent or royalty for the coal mined, is not a mere license, but is a lease. A license is an authority to do a particular act or acts upon another man's land without possessing any estate therein. A lease of the right and privilege to mine or take away stone or coal from the lessor's land is the grant of an interest in the land, and not a mere license to take stone or coal.

5. SAME—*recovery of rent reserved.* A provision in a lease for mining coal, that the lessee or his assigns shall pay a royalty of $1200 a year, payable monthly, whether any coal is mined or not, is a reasonable one, and may be enforced as liquidated damages.

6. In an action upon the covenant in a mining lease to pay to the lessor a royalty on coal mined, not less than $1200, it is not necessary to allege in the declaration that there was minable coal that the defendant ought to have taken out, in the absence of any covenant on the part of the lessor as to the extent of the coal in the land leased. In such case, if there was any fact in existence which would be a bar to the action, the burden is on the lessee or his assignee to plead and prove it.

7. ESTOPPEL—*to claim a lease is a mere license.* In an action by the lessor of coal land, against the assignee, the declaration averred the making of the lease under seal, whereby the plaintiff leased, set over and assigned to the lessee, for the term of twenty-five years, the sole and exclusive right of mining and operating in coal on the land described; that the lessee, by its deed, granted, bargained, sold, assigned and transferred to the defendant the coal underlying said land, together with all the rights and appurtenances thereunto appertaining, as the same were conveyed or assured by such lease, and thereby covenanted with the defendant that such lessee was seized of a perfect title to the property thereby conveyed, and that the defendant accepted such deed, and took and retained possession of the property conveyed under it, and used and controlled the premises: *Held,* that from these averments the defendant was estopped from setting up the claim that the supposed lease was a mere personal license, and therefore not assignable.

8. LANDLORD AND TENANT—*liability of assignee of lease not defeated by his assignment.* If it be conceded that an assignee of a lease is discharged from liability for subsequent breaches by his assignment of the lease, yet his transfer will not have the effect of discharging him for breaches of the covenant already committed, when there was a privity of estate between him and the lessor, and an implied provision to pay the damages occasioned by such breach.

9. PLEADING—*declaration—for recovery on contract for payment in installments.* Any number of installments due upon an instrument in suit may be declared for and recovered upon in one and the same count.

10. PRACTICE—*waiver of objection to evidence.* If there is any ground of objection to a lease given in evidence, the party should make such objection in the trial court, and if overruled, take an exception, and failing to do so he can not make the objection for the first time in a court of review.

11.  Same—*trial by court—proposition that plaintiff can not recover.* On a trial by the court without a jury, a request by the defendant to hold, as a matter of law, that there can be no recovery on the evidence, is equivalent to a demurrer to the evidence, and raises the question of law whether the evidence, with the most favorable intendments granted it, tends to establish the case of the plaintiff.

12.  A proposition of law that, under the facts proved, the plaintiff is not entitled to recover, is properly refused, if the evidence shows that the plaintiff is entitled to recover any sum.

13.  Appeals—*affirmance by Appellate Court settles all disputed questions of fact.* Where a judgment is affirmed by the Appellate Court, the judgment of that court is final, not only in respect to the principal and ultimate facts upon which the cause of action is based, but also in respect of the evidentiary and subordinate facts, which are mere evidence of the principal facts. This consequence extends to all inferences and deductions to be drawn from the evidentiary facts.

14.  Where a common law case is tried by the judge, without a jury, and no question is made as to the ruling on the admission or exclusion of evidence, and no written propositions of law are submitted, and the only exception taken is upon the rendition of the judgment, and the Appellate Court affirms such judgment, the record, on appeal from the Appellate Court, will not present any question for this court.

Appeal from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. Snyder, Judge, presiding.

Mr. Charles W. Thomas, for the appellant.

Mr. J. G. Irwin, and Mr. W. H. Krome, for the appellees.

Mr. Justice Baker delivered the opinion of the Court:

Joshua S. Peers and Adeline C. Peers, lessors in a mining lease made to the Abbey Coal and Mining Company, brought assumpsit, on the 26th day of September, 1888, against the Consolidated Coal Company of St. Louis, as assignee of the lease by deed poll from said Abbey Coal and Mining Company. No demurrer was interposed to the declaration, and the issue joined upon a plea of non-assumpsit was submitted to the court without a jury. The finding of the court was for

the plaintiffs, and the damages were assessed at $1200. A motion for a new trial was made, which was overruled, and an exception taken, and thereupon the defendant moved in arrest of judgment, on the ground that the declaration set out no cause of action; but this motion also was denied, and exception taken. The court then rendered final judgment on its findings for the damages assessed and for costs. The case was then taken by appeal to the Appellate Court for the Fourth District, by the defendant, and the judgment affirmed, and thence appellant brought the record here by this appeal.

It is expedient to so transpose matters as that the last procedure had in the trial court (outside of the mere entry of judgment and the orders consequent thereon) shall be considered first, for if the contention of appellant, in its motion in arrest, that the declaration of appellees sets out no cause of action, is sustained, then that is an end of the matter, at least so far as the present appeal is concerned.

Four reasons are urged why the declaration is bad, and insufficient to sustain the judgment. We will take them up consecutively.

*First*—The first ground urged is, that the suit was brought September 26, 1888, to recover the supposed guaranteed royalty for twelve months elapsing between September 20, 1887, and September 20, 1888; that the year established by the supposed lease commenced on the 17th day of each December; that said royalty was payable annually, in December; that the year ending December 17, 1888, had not elapsed when the suit was begun, and that the absolute guaranty in the supposed lease set up in the declaration is "a yearly royalty of not less than $1200;" that there the covenant ceases, and all that follows after the words "and if" is a privilege reserved, instead of a covenant.

That part of the declaration upon which this objection is predicated, is, as we find it stated in appellant's abstract of the record, as follows: "That the plaintiffs, on the 17th day of

December, 1870, made a certain coal lease to the Abbey Coal and Mining Company for the term of twenty-five years from its date, whereby they granted to the said company the sole right to mine the coal from under the land described in said lease; that the said Abbey Coal and Mining Company agreed to begin mining coal from the said land within twelve months of the date of said lease, and to guarantee the plaintiffs a yearly royalty of not less than $1200 after the expiration of twelve months from the date last aforesaid; that if, after the expiration of one year, no coal should be mined from the said tract of land, and the lessee should pay the monthly install-ments of $100 in their guarantee of $1200 a year, said pay-ments should be considered as advanced royalty, and said lessee was to have the right to mine coal sufficient to make the amount of coal mined equal the amount of royalty paid, provided that the royalty paid should not be less than $100 per month; that the said lessee should carry on the work in a good and workmanlike manner, and take as much coal from said land as a proper regard for the safety of the mine would admit, and to pay the plaintiffs a royalty of three-eighths of a cent per bushel of eighty-five pounds for all coal mined, ex-cept such as was taken from shafts, entries and courses, and such as was used at the mines for stationary engines, and that such royalty should be paid monthly, on the 20th day of the month, for coal mined the preceding month."

It was said by Chief Justice Gibson in *Walker* v. *Physic*, 5 Barr. (Pa.) 193, that the great rule for the interpretation of covenants is, to so expound them as to give effect to the actual intent of the parties, collected, not from a single clause, but from the entire context.    And in *Reniger* v. *Fogossa*, Plowd. 18, it was said: "The scope and end of every matter is prin-cipally to be considered; and if the scope and end of the matter be satisfied, then is the matter itself, and the intent thereof, also satisfied."    The doctrine of these cases has been

frequently affirmed by this court, and announced in decisions too numerous to specify.

Applying this doctrine to the lease declared on in the *narr.*, we find that the term "royalty" is applied by the parties, not only to the three-eighths of a cent per bushel to accrue from coal actually mined, but to the monthly payments of $100 to accrue upon the guaranteed "yearly royalty of not less than $1200." Indeed, it is expressly charged in the declaration that it was agreed that "said payments should (in the lease itself the word used is "shall") be considered as advanced royalty." The "royalty" was not to be less than $100 "paid in any one month," and it is averred in the declaration "that such royalty should be paid monthly, on the 20th day of the month, for coal mined the preceding month." In view of the context, and in view of the fact that if no date of payment had been fixed by the clause last quoted the monthly payments of "advanced royalty," or guaranteed royalty, would have been due on the 17th day of each month, instead of upon the 20th day of each month, it seems clear that it was not intended by the parties that said clause above quoted should be limited to royalty upon coal actually mined. In other words, we think that the meaning of the lease, as deducible from the averments of the declaration, when taken as a whole, is, that the guaranteed royalty, although fixed on a yearly basis of $1200, was to be paid in monthly installments of $100 each, and the days when such respective payments should be made were duly designated. We may add, that any number of installments due upon an instrument in suit may be declared for and recovered upon in one and the same count. (*Godfrey* v. *Buckmaster*, 1 Scam. 450.) In our opinion the first objection made to the declaration should not be sustained.

*Second*—The second point made is, that the supposed lease set up in the declaration is a mere personal license, and was not assignable.

The declaration avers that "the plaintiffs, by their certain instrument in writing and under seal, commonly called a lease, * * * leased, set over and assigned unto the said Abbey Coal and Mining Company, for the full term of twenty-five years from the date thereof, the sole and exclusive right of mining and operating in coal on the tracts of land above described," etc. And it further avers, that "when, etc., by its deed of that date, * * * it, the said Abbey Coal and Mining Company, granted, bargained, sold, assigned, transferred and set over to the defendant the coal underlying said tracts of land, together with all the rights, privileges and appurtenances thereunto appertaining or belonging, as the same were conveyed or assured by said lease, * * * thereby covenanted and agreed to and with the defendant that it was seized of a perfect title to the property thereby conveyed," etc.

It seems to us that appellant, by accepting said deed, and taking and holding possession under it, of the property conveyed, and using, controlling and enjoying such property, all which further facts are also alleged in the declaration, should be estopped from making the claim now under consideration. But be that as it may, the law is against the validity of the claim. The lease declared on by appellees is not a mere personal license. A license is an authority to do a particular act or acts upon another man's land without possessing any estate therein. (1 Washburn on Real Prop. chap. 12, sec. 2, p. *398.) The lease here involved invests the lessee with the "sole and exclusive right" to mine and operate in coal on certain described lands. The right granted is not limited to any particular vein or stratum, but extends to all coal under said lands, and it is exclusive of the whole world, including the lessors themselves, and is for the full term of twenty-five years from the date thereof. The law, as we understand it, is, that a lease of the right and privilege to mine or take away stone or coal from the lessor's land is the grant of an interest in the land, and not a mere license to take stone or coal. (Caldwell

v. *Fulton,* 31 Pa. St. 475, and authorities cited therein; *Harlan* v. *Lehigh Coal Co.* 35 id. 287.)   This second point made by appellant is not tenable.

*Third*—The third ground of objection is, that the supposed guaranty of $1200 a year as royalty merely fixes a penalty, and the appellees could only recover for its breach such damages as the proof shows that they actually suffered, so that an action for the $1200, as for liquidated damages, does not lie. As authority for its contention in support of this position appellant places its principal reliance upon the decision of this court in *Scofield* v. *Tompkins,* 95 Ill. 190.   In that case the question was, whether the $22,770 named in the agreement as the price of the land, and also as liquidated damages in case that sum was not paid by a fixed day, and time of payment being made of the essence of the contract, may be recovered, or only such damages as can be shown to have been actually sustained by breach of the agreement.   The plaintiff still had the land, and by his action was seeking to recover its full price and also retain the land.   This court held that the parties may agree upon any sum as compensation for the breach of a contract which does not manifestly exceed the amount of the injury suffered, but when it is manifestly above that sum, and the damages are such as can readily be shown, such sum so inserted in the contract will be regarded merely as a penalty to insure prompt payment or performance.   The court, in delivering its opinion, said: "The fact that the parties fix a sum to be paid and call it liquidated damages does not always control the question as to the measure of the recovery for the breach of the contract."   And further said: "It is true, the parties are authorized to agree upon any sum as compensation for the breach of the contract which does not manifestly exceed the amount of the injury suffered.   This is believed to be the doctrine of the courts, and to be well sustained by authority."   And the court, in its opinion, quoted from Sedgwick on the Measure of Damages, page 493, as fol-

lows: "If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will be inclined to give the relief which the parties have agreed on. But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term 'liquidated damages' will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties." And to this quotation from Sedgwick the court then added these words: "The weight of the authorities sustains these propositions."

We understand the rule to be, that if, from the nature of the contract, the damages can not be calculated with any degree of certainty, or there are peculiar circumstances contemplated by the contract, the stipulated sum will be held to be liquidated damages. (See 5 Am. and Eng. Ency. of Law, p. 25, and the numerous cases cited in note 3; also, in same volume, the cases cited on p. 24, note 2.) We think the rule last above stated is applicable to the case at bar, and further think that *Scofield* v. *Tompkins, supra,* supports the contention of appellees herein, rather than that of appellant. Besides this, the clause in question was, under the circumstances of the case, an eminently reasonable one. Without it, the effect of the contract would have been to divest appellees of all control over the coal under their land for the long period of twenty-five years, and would have left them without any power to compel the lessee or its assigns to take out a bushel of it, and without any assurance or guaranty of a cent of income from it. The lessee was a coal mining company, and must be presumed to have been well informed in respect to the subject matter in regard to which it was contracting, and it is manifest from the terms of the lease, as they are set forth in the declaration, that the parties believed that the royalty would exceed, instead of fall below, $1200 a year. This is obvious from the fact that said sum is fixed as the minimum

limit of the royalty to be paid. The third objection urged to the declaration is overruled.

*Fourth*—The fourth and last objection made to the declaration is, that in order to show a cause of action grounded upon the supposed guaranty to pay $1200 as annual royalty, the declaration should allege that there is minable coal that the appellant might take out.

*Marquis of Bute* v. *Thomson*, 13 Meeson & Welsby, *487, was an action of covenant, and the defendants had expressly covenanted that they, etc., should and would raise and work 13,000 tons of coal in each and every year during the term, and pay at the rate of eight pence per ton royalty for the same, or pay in money, annually, £433, 6s. 8d. each year, as fixed rent, whether coals should be wrought or not, and also nine pence upon each ton over and above that quantity, to whatever extent the same might be wrought. The Court of Exchequer, in its opinion delivered by Pollock, Chief Baron, held that the stipulation for a fixed rent, coupled with a covenant that coal should be wrought to that extent, and if above it, that there should be a payment of nine pence for each ton over and above, does not carry with it, by any implication, a condition that there should be coals to that amount capable of being wrought; but that it was a stipulation on the part of the defendants that they would work and get that quantity, and that if they did not get it they would pay a fixed rent to the landlord, and that a condition can not be imported into the covenant that there should be coals to that extent, and that if that was the intention of the parties they should have so expressed it, and the judgment was for the plaintiff.

*Harlan et al.* v. *Lehigh Coal, etc. Co.* 35 Pa. St. 287, was covenant upon a coal lease, brought by Harlan and others, who were lessees, against said corporation, the lessor, and the breach alleged was, that the supposed mines were not coal mines, and did not contain stone coal, contrary to the tenor and effect of the defendant's covenant. At the trial the court

23—150 Ill.

below charged the jury as follows: "The defendant does not covenant for coal in any of the veins. He lets them, and the plaintiffs take them, subject to the ordinary risk of mining, without any covenant, express or implied, of the existence of coal, or of the quantity or of the quality of coal." The judgment was affirmed, and the court, in its opinion, said: "It was undoubtedly coal veins that were intended to be leased, and if the parties were mistaken about the fact, the result would be a right to dissolve the contract, and not a right to have a different contract in its stead. It is apparent that the R. and S. veins were known subjects of contract, that they were supposed to exist in the lessor's land as they did elsewhere, and that the lease was intended as a grant of the right to find and work them, but we have nothing that entitles us to construct a warranty that the lessees should be able to find and work them."

Appellant calls our attention to no authority in conflict with the doctrine of these two cases, and we have no knowledge of the existence of any such authority.

But there is another ground upon which the decision of this matter can be placed. The lessee expressly covenanted to pay this $1200 royalty, and appellant, when it became assignee of the lease, also became liable to perform the covenants of the lease by reason of the privity of estate, and, in contemplation of law, promised so to do. If there was any fact in existence which would be a bar to the action brought to enforce such liability and promise, the burden would be upon it to plead and prove such fact. This would seem to be in consonance with the principles of pleading. That such is the recognized practice would seem to be indicated by one of the cases last cited. In *Marquis of Bute* v. *Thomson*, the report shows that the defendants in their plea craved oyer of the indenture of lease, and set it out in full, and then pleaded as to the alleged breach of covenant in the declaration relating to the non-payment of half a year's rent, that, etc., said

coal became and was, etc., greatly exhausted, and that, etc., less than one-fourth part of such 13,000 tons, and no more, was left and remained to be worked, etc., under and by virtue of said indenture, etc., and it was upon a demurrer to this plea that the case was decided, the point marked for argument on the part of the plaintiff being, that the covenant was an absolute covenant to pay the money rent, and not a conditional covenant.

There being no merit in this fourth ground of objection to the declaration, and there being, as we have seen, no merit in any of the other objections urged against it, it results that the trial court committed no error when it overruled the motion in arrest of judgment.

It is assigned as error that the circuit court erred in denying the motion for a new trial, and one of the specifications in the motion entered in that court for a new trial is, that "the court admitted improper evidence at plaintiff's instance." Attention is called by counsel to a supposed defect in the lease, in respect to the manner in which it was signed and executed by or on behalf of the Abbey Coal and Mining Company. It appears, however, that the defendant below interposed no objection to the introduction in evidence of either said lease or any other testimony that was offered by the plaintiffs below. If the defendant had any objection to the lease going in evidence, it should have made that objection in the trial court, and if such objection was overruled, should have taken an exception. Not having done so it can not interpose an objection, for the first time, in a court of review.

We find, however, that in another part of his brief and argument counsel for appellant makes the claim that appellant requested the circuit court to hold, as matter of law, that there could be no recovery on the evidence, and that this was equivalent to a demurrer to the evidence, and raised the question of law whether or not there was any evidence which, with the most favorable intendments granted it, tended to establish the

case of appellees.   The first clause of this claim is true, as matter of fact, and the other clause is correct as matter of law. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Lewis,* 109 Ill. 120; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416.)   In connection with this claim, appellant states, in substance, that the declaration avers that appellees made a certain lease to the Abbey Coal and Mining Company, which that company afterwards assigned to the appellant.   It is then urged that there is no evidence which connects said Abbey Coal and Mining Company with the land or the lease; that the instrument is executed by Joshua S. Peers, Adeline C. Peers and E. J. Crandall, and is sealed with their private seals, and acknowledged by them in their several individual capacities; that it is the act and deed of the three persons who signed and sealed it, and that the description of the parties in the body of the instrument must yield to the attestation and signatures thereto attached,—citing as authority in that behalf the case of *Northwestern Distilling Co.* v. *Brant,* 69 Ill. 658.   The conclusions that appellant draws from these premises are, that neither the Abbey Coal and Mining Company nor appellant ever had any privity of contract or privity of estate with appellees, and that therefore the evidence did not tend to establish the case of appellees.

In the premises of the indenture, J. S. Peers and Adeline C. Peers are named as parties of the first part, and the Abbey Coal and Mining Company is named as party of the second part, and in all subsequent clauses and parts of the lease they are spoken of as the parties of the first part and party of the second part, respectively.   The attestation reads as follows:

"In witness whereof the said parties have this day subscribed their names and affixed their seals, dated December 20, 1870.          Joshua S. Peers,          [Seal.]

Adeline C. Peers,          [Seal.]

E. J. Crandall, *President.* [Seal.]"

The case of *Northwestern Distilling Co.* v. *Brant, supra,* relied on by appellant, was almost the converse of this. There, in the premises of the lease, Edward F. Lawrence, president of the Northwestern Distilling Company, was named as party of the second part, etc., and the attestation was: "In testimony whereof the said parties have hereunto set their hands and seals," etc. Then followed the name and seal of Brant, the lessor, and just below it, "Northwestern Distilling Co. [Seal.] By Edward Lawrence, President." This court, in its opinion, said: "The only circumstance which raises any difficulty is, that in the commencement of the lease, Lawrence, president of the company, is described as the party of the second part, and the covenant is by 'the said party of the second part.' The contract, as claimed, is one made by a corporation, which can act only by its agents, and it is apparent upon the face of the instrument that Lawrence does not act individually, but as president of the company, *for* the company. Had he executed the instrument in his own name, *for* the company, it would have been a good execution by the company.   *   *   *   The conclusion of a lease, as well as its commencement, may be looked to for the description of the parties. The conclusion describes them to be those persons who have set their hands and seals to the instrument, and it is the signature and seal of the Northwestern Distilling Company which are set thereto, not those of Lawrence,"—and the judgment against the distilling company for breach of covenant was affirmed.

In *Phillips* v. *Coffee*, 17 Ill. 154, a question arose in regard to a deed of assignment from the State Bank of Illinois to certain persons, of all the lands, lots, etc., belonging to the bank. It appears from the statement of the case that the deed was signed "Thomas Mather, President," and purported to be under the seal of the bank. The court, in its opinion, said: "Its execution by the president of the bank is shown, and the seal affixed affords *prima facie* evidence that it is the seal of the bank."

In *I. C. R. R. Co.* v. *Johnson*, 40 Ill. 35, this court said: "This court does not know, judicially, that the railroad company has a seal, other than a scrawl, such as appears in this record, and which purports to be a seal. Moreover, this is a copy of the original bond, and the clerk could not make a *fac simile* of a corporate seal or device which might have been, and, for aught that appears, was, attached to the original bond."

In *Sawyer* v. *Cox*, 63 Ill. 130, it was held that a deed purporting to bind a corporation, and signed by the president or vice-president of such corporation, and not in the name of the corporation, but with a seal attached, would be presumed by the law to have been executed by sufficient authority, and that it would also be presumed that the seal annexed was the seal of the company, and in the opinion of the court the case of *Phillips* v. *Coffee, supra,* was both fully considered and fully approved.

The decisions of this court above mentioned are decisions of the fact that there was evidence in the record tending to prove the case of the plaintiffs.

It is urged that the circuit court erred in refusing to hold the following proposition, to-wit: "The court is requested to hold, that under the facts proven in this case the plaintiffs are not entitled to recover." It is manifest that there was no error in refusing to hold this proposition, even if it be conceded, for the purposes of this decision, that the assignment made by appellant to Lasurs on November 28, 1887, was a valid assignment, and had all the effect claimed for it. The admissions contained in the record show that judgment had been recovered by appellees against appellant for all the rent and royalty due under the lease up to the 17th day of September, 1887, and that judgment paid and satisfied. We have already held herein that the guaranteed royalty of $1200 annually was payable in installments of $100 each, due on the 20th day of each and every month during the term demised.

This suit was commenced on the 26th day of September, 1888, to recover twelve of the installments of royalty, the last of them having fallen due, under the terms of the lease, on the 20th day of September, 1888. The assignment from appellant to Lasurs was put in evidence by appellant, and bears date November 28, 1887. It follows that two monthly installments of guaranteed royalty became due, under the covenants of the lease, after the 17th of September, 1887, and before the assignment of November 28, 1887, to Lasurs. During the whole of that time, and at the dates when said two installments became due and default was made in their payment, appellant continued to be, and was, the tenant of appellees, and legally liable to them for the payment of said installments. It follows that, in any event, appellees were entitled to recover $200, and that therefore it was not error to refuse to hold that under the facts proven in the case they were not entitled to recover anything.

The court also refused to hold a proposition of law submitted by appellant which reads as follows:

"If the court believes, from the evidence, that the defendant, in November or December, 1887, by an instrument in writing, assigned and transferred to one Jacob Lasurs all its right and title and interest, as assignees of the lessee, in the lease in the declaration mentioned, and set over to said Lasurs its leasehold estate held under said lease, then plaintiffs can not recover in this case."

This proposition was vicious for the same reasons that the proposition last considered was vicious, for, even if it was admitted that the assignment of November 28, 1887, discharged appellant from liability for subsequent breaches, yet it did not, and could not, have the effect of discharging it from liability for the breaches of covenant that had already taken place, and at times when there was a privity of estate between it and appellees, and an implied promise to pay the damages occasioned by such breaches. It is clear that there was not

manifest error in refusing to hold said proposition as law in the decision of the case.

Appellant urges that it, by accepting the deed of assignment from the Abbey Coal and Mining Company, did not, by virtue of certain language used in that deed, expressly agree to perform all the covenants contained in the lease, even after the assignment to Lasurs. That question is not presented for our decision by the record. In order to have raised and preserved that question of law for the decision of this court, it should have offered in the trial court a proposition to the effect that there was nothing in the deed poll made to it by the Abbey Coal and Mining Company, which, in law, bound it to pay the royalty accruing after the assignment to Lasurs.

It is also insisted by appellant, that it assigned the lease on the 28th day of November, 1887, to one Jacob Lasurs, and the legal effect of such assignment was to discharge it, appellant, from liability for subsequent breaches, even though it was done for the express purpose of getting rid of responsibility, and although the second assignee never took possession of the demised premises or received the lease. The proposition of law involved in this instance, also, was not embodied in a written proposition, and submitted to the court to be held as law in the decision of the case. It is true, a proposition containing some of the elements here contended for was offered, and refused, but it was coupled with another proposition which it would have been error to hold, and if such other proposition had been stricken out, it would have rendered the proposition as offered wholly senseless and nugatory.

The case was tried before the court without a jury, and the judgment of the circuit court has been affirmed by the Appellate Court. The consequence of this is to settle every question of fact against appellant. The judgment of the Appellate Court is final, not only in respect to the principal and ultimate facts upon which the cause of action is based, but also

in respect to the evidentiary and subordinate facts, which are mere evidence of the principal facts.     This consequence extends to all inferences and deductions to be drawn from the evidentiary facts.     *Powell* v. *McCord,* 121 Ill. 330 ; *Darlington* v. *Chamberlin,* 120 id. 585 ; *People* v. *Illinois and St. Louis Railroad and Coal Co.* 122 id. 506 ; *Hamburg-American Packet Co.* v. *Gattman,* 127 id. 598 ; *Alphin* v. *Working,* 132 id. 484 ; *Pennsylvania Co.* v. *Ellett,* id. 654 ; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Wilson,* 133 id. 55 ; *Pennsylvania Co.* v. *Backes,* id. 255 ; *Consolidated Ice Machine Co.* v. *Keifer,* 134 id. 481.

Where a common law case is tried by the judge without a jury, and no question is made as to the ruling on the admission or exclusion of evidence, and no written propositions of law are submitted, and the only exception taken is for the rendition of the judgment, and the Appellate Court affirms such judgment, the record, on appeal from the Appellate Court, will not present any question for this court, and all it can do will be to affirm the judgment of the Appellate Court. *Myers* v. *Union Nat. Bank,* 128 Ill. 478 ; *McDonald* v. *Allen,* id. 521.

We have examined all the questions of law that appear upon the record, and that are so saved, by exception or otherwise, as that we have cognizance of them, and we find no error in respect thereto.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, having heard this case in the Appellate Court, took no part in its decision here.