(No. 14922.—Reversed and remanded.)

*In re* Will of JOHN W. PORTER.—(A. GRANT PORTER, Appellant, *vs.* LOLA V. PORTER *et al.* Appellees.)

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. WILLS—*what evidence is necessary for probate of a will in the county court.* Before a will can be admitted to probate by the county court two subscribing witnesses must declare on oath that they were present and saw the testator sign the instrument or heard him acknowledge his signature, and that they believed the testator to be of sound mind and memory at the time of signing or acknowledging the same.

2. SAME—*what evidence may be received in circuit court to determine whether will should be admitted to probate.* Under section 13 of the Wills act, the proponents, although confined in the county court to the testimony of the subscribing witnesses if they are available, may produce such other witnesses in the circuit court as they desire; and in determining the question as to the due execution of the will the same rules and presumptions prevail which control the trial of other questions of fact, and the will should be admitted to record if its genuineness and due execution are established by evidence competent to establish a will in chancery.

3. SAME—*when circuit court should allow probate of will.* The circuit court, on appeal in a proceeding to probate a will, should admit the instrument to record where the proponents have established that the signatures of the testator and of the subscribing witnesses are genuine and prove circumstances tending to show a compliance with the statute concerning the presence of the testator and the witnesses, although the subscribing witnesses are not able to recall the circumstances of the execution of the instrument sufficiently to warrant its probate by the county court. (*Greene* v. *Hitchcock,* 222 Ill. 216, and *Hill* v. *Kehr,* 228 id. 204, distinguished.)

STONE, J., dissenting.

APPEAL from the Circuit Court of Cass county; the Hon. GUY R. WILLIAMS, Judge, presiding.

E. D. REYNOLDS, and MORRIS J. HINCHCLIFF, for appellant.

E. E. WINGERT, and A. F. WINGERT, guardian *ad litem,* for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

John W. Porter, a practicing physician in Virginia, Illinois, wrote and signed an instrument purporting to be his will August 16, 1921. The principal provisions of the instrument gave Lola Porter, his wife, a life estate in most of his property, and Grant Porter, his brother, the remainder in fee. The question for decision is whether the instrument was duly executed. It was denied probate by the county court and the circuit court of Cass county, and this appeal is prosecuted to review the decision of the latter.

Henry McDonald testified that he is now, and for many years has been, cashier of the Centennial National Bank of Virginia; that Dr. Porter had practiced medicine in Virginia about twenty years; that he knew him well; that the doctor had a checking account in the Centennial National Bank; that he came to the bank frequently and that his checks passed through the bank regularly; that he came to the bank with the instrument filed for probate as his will; that he walked up to the customers' window, handed the paper through the window to witness, and stated that he wanted witness and Col. Coons to witness his signature; that the paper then bore the genuine signature of Porter; that below and to the left of his signature were three blank lines, below which was the word "witnesses;" that witness signed his name on the top line; that Coons was then working five or six feet behind him; that he either handed the paper to Coons or called him to the window; that Coons signed on the second line and Petefish on the third; that the three witnesses were inside the work-room of the bank at the time they signed their names to the instrument; that Porter was standing just outside the counter while the witnesses were signing their names; that there was nothing to obstruct the view between Porter and Coons, but that Petefish was working on the opposite side of the room and his

view may have been obstructed by the ground glass in the partition above the counter.

A. J. Coons testified that he is now, and has been for many years, assistant cashier of the Centennial National Bank of Virginia; that he knew Dr. Porter for twenty years; that they were close friends; that he was familiar with his signature and that he knew the signature on the instrument in question was Porter's signature; that the first time he saw the instrument was when it was placed in front of him by McDonald; that he was then working on the books of the bank at his counter; that McDonald brought the paper to him and asked him to witness Porter's signature; that the signatures of Porter and McDonald were on the paper at the time; that he signed his name on the line under the name of McDonald; that he was about ten feet away from the window where McDonald says Porter was standing, and that there was nothing to obstruct his view of the window if he had turned his head and looked; that he signed his name to the paper and handed it back to McDonald; that he would not say that he did not see Porter at the window on that occasion but that he has no recollection of seeing him there.

Glen Petefish testified that he was employed at the bank; that he was acquainted with Dr. Porter; that he had seen Porter write his name many times and that he knew his signature; that the last signature on the instrument in question is the signature of witness and that he placed it there; that the other signatures on the instrument are the genuine signatures of Porter, McDonald and Coons; that he has no recollection of signing the instrument and has no recollection of having seen the instrument before it was presented to him on the witness stand; that he does not remember that anybody asked him to sign the paper and does not recall the circumstances surrounding the signing of it.

A. F. Wingert, a brother of appellee Lola Porter, testified that he, with appellant and Lola, went to the office

of Dr. Porter the day following his funeral; that they found in his office a locked safe; that Mrs. Porter knew the combination and opened the safe; that there were many papers and documents in the safe, which were taken out and examined; that the contents of the safe were the property of Porter and that all his private papers were found there; that a sealed envelope marked "Will of Dr. Porter" was found among the papers; that the envelope was opened and that the instrument in question was taken from the envelope; that it then bore the four signatures it bears now and was in the same condition then as it is now; that the instrument was read and was later filed for probate in the county court of Cass county.

Section 2 of the Wills act provides that all wills shall be reduced to writing, shall be signed by the testator and shall be attested in the presence of the testator by two or more credible witnesses. Before the instrument can be admitted to probate by the county court two of the subscribing witnesses must declare on oath that they were present and saw the testator sign the instrument or heard him acknowledge his signature, and that they believed the testator to be of sound mind and memory at the time of signing or acknowledging the same. The proof in this case did not meet the requirements of this section of the statute, and so the county court properly denied the admission of the instrument to record. Section 13 of the act provides that when the probate of a will is allowed or refused by the county court and an appeal is taken from that order to the circuit court, "it shall be lawful for the party seeking probate of such will to support the same, on hearing in such circuit court, by any evidence competent to establish a will in chancery." Before the instrument filed for probate can be admitted to record by the circuit court it must be proven that the instrument was signed and attested in the presence of the testator by two or more credible witnesses. The contestants have no right to offer witnesses in a proceeding to

probate a will in the county court or in the circuit court. (*Heirs of Critz* v. *Pierce,* 106 Ill. 167; *Mayer* v. *Schrenkler,* 286 id. 324.) The proponents are confined to the testimony of the subscribing witnesses in the county court if they are available, but they may produce such other witnesses as they desire in the circuit court.

In *Thompson* v. *Owen,* 174 Ill. 229, an instrument was denied probate on the ground that there was a failure of proof of due execution. The attesting witnesses testified that they had no recollection of signing their names to the instrument, or of seeing the deceased sign the instrument, or that the deceased ever acknowledged the signature to the instrument to be his signature. It was established that the signature to the instrument was the genuine signature of the deceased, and the attesting witnesses admitted that their genuine signatures were appended to the attestation clause. According to the recitals of the attestation clause the will was legally executed, and it was held that the attestation clause was competent to be received in evidence in the circuit court, and that the circuit court had the right to consider the clause, in connection with other evidence, in determining whether the instrument was executed in compliance with the requirements of the statute. After a review of decisions of this and other courts of last resort this court held that the evidence clearly established that the instrument was duly executed, notwithstanding the fact that two persons were not produced who could testify directly that the testator signed the instrument.

In *Mead* v. *Presbyterian Church,* 229 Ill. 526, an instrument was produced which bore the genuine signatures of the testator and two subscribing witnesses. There was no attestation clause. One of the witnesses testified that his signature was attached to the instrument but that he had no recollection of signing his name there and had no recollection of seeing deceased sign the instrument or of hearing him acknowledge his signature to the same. After the

testator's death the instrument was found among his private papers, duly signed and witnessed. This court held that the circuit court had the right to weigh and consider the evidence produced and the circumstances surrounding the execution of the instrument, and that the evidence justified the admission of the instrument to record notwithstanding the fact that two witnesses were not produced who saw the instrument signed by the testator or heard him acknowledge his signature to the same.

It has been repeatedly held by this court that on the hearing in the circuit court on the question of the due execution of the instrument involved, the question of fact presented is determined by the same rules and presumptions which control the trial of other questions of fact, and that the instrument should be admitted to record if its genuineness and due execution are established by evidence competent to establish the will in chancery. (*Gould* v. *Theological Seminary,* 189 Ill. 282; *Kaul* v. *Lyman,* 259 id. 30; *In re will of Simon,* 266 id. 304; *Hutchison* v. *Kelly,* 276 id. 438; *Beck* v. *Lash,* 303 id. 549.) There is nothing in *Greene* v. *Hitchcock,* 222 Ill. 216, or *Hill* v. *Kehr,* 228 id. 204, in conflict with this rule. In those cases the instrument filed for probate was admitted to record, and prior to the amendment of section 13 in 1909, where the county court admitted the will to probate and there was an appeal to the circuit court the proponents were limited in the circuit court to exactly the same evidence they could produce in the county court,—the testimony of the subscribing witnesses. These cases were distinguished in *Flynn* v. *Flynn,* 283 Ill. 206.

There is no contention that Dr. Porter was unsound mentally, that any undue influence was used to bring about the execution of his will, or that the will is not genuine in every respect and does not express his wishes regarding the distribution of his property. It is established beyond all doubt by the evidence in this record that the will was duly

309—15

and properly executed, and the circuit court should have admitted it to record.

The judgment is reversed and the cause is remanded to the circuit court of Cass county.

*Reversed and remanded.*

Mr. JUSTICE STONE, dissenting.