In the Matter of the Estate of Alice Ann Walker, Deceased, Fred Walker, Appellee, v. John Walker, Appellant

Gen. No. 33,970.

Opin-
ion filed February 24, 1930.

DAY & BEILMAN, for appellant.

NELS H. OLSON, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

An instrument in writing purporting to be the last will and testament of Alice Ann Walker was admitted to probate in the probate court July 14, 1927. Upon appeal to the circuit court the cause was submitted for trial by the court, and again there was a finding for the proponent and judgment that the instrument be admitted to probate and for costs. This appeal from that judgment is prosecuted by John Walker, a son of the decedent.

It is contended that the alleged will should not have been admitted to probate because it was not signed nor acknowledged by the testatrix in the presence of two witnesses, as required by the statute, and was not attested by two witnesses in the presence of the testatrix as required by the same statute.

There is practically no contradiction in the testimony as to any material fact. The instrument consists of three typewritten pages, each of which bears the signature of the testatrix and purports to have been executed on March 27, 1926. The instrument is under seal,

and it is not questioned that the genuine signature of the testatrix is attached thereto. Following her signature, in a formal attestation clause in due form, three witnesses certified that the instrument was signed, sealed, published and declared by the testatrix "in the presence of us, who at her request and in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses. . . ." All these witnesses testified upon the hearing that they believed the testatrix at the time she executed the instrument was of sound mind and memory and that there was no fraud, duress or undue influence.

At the time the instrument was executed testatrix was about 75 or 76 years of age and was somewhat lame, but there is no evidence of any other physical or any mental infirmity. At the time in question, two of the attesting witnesses, Robert Whitelaw and Lucy M., his wife, lived at 1116 West Crescent avenue, Park Ridge. The Whitelaws had known the testatrix for about 12 years. The house in which they lived stood on the north side of a street which runs east and west, and the house faced south. On the front of the house was a porch about 6 or 8 feet wide. It was roofed and was about 4 feet above the walk which led to the house. There were 6 or 7 steps leading to the porch but no steps from the porch to the inside of the house. There was a little railing about 2 feet high on the outside of the porch which enclosed it. About 6 or 8 feet back from the front of the porch there were 3 windows. Inside of the house a library table about 2 feet wide stood about 3 inches back from one of the windows.

On the Saturday afternoon of the day when the instrument was executed, Fred Walker, a son of testatrix, called the Whitelaws on the phone and said he would like to know if Mr. and Mrs. Whitelaw would sign his mother's will, and Mr. Whitelaw said they would be glad to do so. Fred Walker also asked Mr.

Whitelaw to ask his brother-in-law, David Frost, if he would sign. Fred Walker said he was coming there with his mother in the afternoon, and Mr. Whitelaw said, "All right."

About 3 or 3:30 o'clock in the afternoon Fred Walker came with the testatrix in a Hupmobile sedan car, which stopped in the road in front of the house; the car faced to the east and the testatrix sat in the back seat. The car was about 35 feet from the library table standing by one of the windows in the living room of the house. When Fred Walker went into the house he had the will with him and asked Mr. Whitelaw to sign it. The testatrix sat in the car while Fred went into the house with the will, and Mr. and Mrs. Whitelaw and David Frost were in the house at that time. Fred asked them to sign the will and Mr. Whitelaw said, "Now, Fred, before I sign the will I must go out to the car and ask your mother if it is her will and her signature." Mr. Whitelaw then took the will, went out to the car and asked the testatrix if that was her will and her signature and she said that it was. He then went back into the house and told his wife and Mr. Frost that it was Mrs. Walker's will and that it was her signature. The instrument was then placed on the table, and Robert Whitelaw signed first, Mrs. Whitelaw second and David Frost third. The three witnesses were present at the same time and signed in the immediate presence of each other, and they testified that at the time of signing they were in plain view of the testatrix; that they could see her and that so far as they knew she could see them.

After the witnesses had signed Fred Walker took the will. Mrs. Whitelaw walked out to the car in which testatrix sat, and a little later Robert Whitelaw, David Frost and Fred Walker went out together and walked towards the car. When about 10 feet from the car Frost spoke to the testatrix, bade her good-by and went towards his own home. Fred Walker handed the writ-

ing over to the testatrix and thanked the Whitelaws for signing it; the testatrix nodded her head in assent and said she was glad it was done. When Robert Whitelaw took the will out and asked the testatrix with reference to it, neither Mrs. Whitelaw nor Mr. Frost heard his question or her reply thereto.

The second section of the Statute of Wills (Cahill's St. ch. 148, ¶ 2; Smith-Hurd's Ill. Rev. Stat. 1929, ch. 148, sec. 2, p. 2906) provides that wills ''shall be reduced to writing, and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses, two of whom, declaring on oath or affirmation, before the County Court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will, testament or codicil, to admit the same to record: Provided, . . .''

The contestant says that he does not contend that a testatrix must sign in the presence of the witnesses, but his point is that she must either sign or acknowledge it in their presence and that an acknowledgment must be made to the full number of witnesses. The testatrix expressly acknowledged to Robert Whitelaw that she signed the will prior to the time when the witnesses wrote their signatures upon the document. After the witnesses had signed it was taken by the son to the automobile and there in the presence of the witnesses and testatrix he thanked them for their services and handed the will to testatrix as executed. She nodded her head in assent to what the son said and stated that she was glad it was done. We think this

amounted to an acknowledgment of the will on her part sufficient to comply with the technical requirements of the statute. It will be remembered that the genuineness of the signature of the testatrix is not questioned. The contestant, however, cites *Calkins v. Calkins,* 216 Ill. 458, but the controlling question in that case was whether the will had been properly attested, not whether the testator had made due and sufficient acknowledgment. The language of the opinion is rather against the theory of the contestant, the court stating:

"The provisions of the statute as to the signing by the testator and the witnesses are different. He may either sign the will in the presence of the witnesses or acknowledge that the will is his act and deed, but as to the witnesses, the only provision is that they shall attest the will in his presence."

We think this instrument was duly acknowledged.

The controlling question in this case is whether the instrument was duly attested by the witnesses in the presence of the testatrix. The proponent contends that the fact that the attestation clause attached to the will is in due form is evidence tending to show that it was properly attested. Such is the general rule stated in *Schofield v. Thomas,* 236 Ill. 417; *Dubach v. Jolly,* 279 Ill. 530; *Flynn v. Flynn,* 283 Ill. 206, and other cases cited.

It is, however, argued that the rule is applicable only where the witnesses are forgetful or are impeached. The rule is not so limited, and we think it would be impracticable to impose any such limitation on it. However, as is suggested, the rule is not intended to render the formalities of the statute indispensable. The attestation clause was properly received in evidence upon the hearing in the circuit court (*Chandler v. Fisher,* 290 Ill. 440; *In re Will of Porter,* 309 Ill. 220; *Thornton v. Herndon,* 314 Ill. 360) and is some evidence tending to show due attestation. This

evidence, of course, is by no means conclusive and perhaps little weight should be given to it in a case where, as here, the recollection of the witnesses is clear and their evident purpose to state the facts just as they took place unquestioned.

The contestant relies on *Hill v. Chicago Title & Trust Co.,* 322 Ill. 42, a case in which the general rules as to the acts necessary to the due execution of a will are stated. The facts of that case, however, are not at all similar to those which appear here, since in that case the signature of one of the two attesting witnesses was not legible and there was no evidence as to his identity. It is stated in that case:

"The execution of a will does not consist, alone, of the signing of the instrument by the testator, but a material part of its execution is its attestation by two witnesses in the presence of the testator. Proof of the execution of a will, therefore, does not consist, alone, of evidence of the signature by the testator, but evidence of its attestation is also a material part of the proof of its execution."

The final question here is whether the witnesses, who without question signed the will, performed that act in the presence of the testator within the meaning of the statute. In determining what is the presence of a testator within that meaning the courts have been required to pass upon unusual situations. In *Ambre v. Weishaar,* 74 Ill. 109, the witnesses, after the instrument had been signed by the testator, went from the bedroom where the testator had signed into a dining room and there attested the instrument. The testator could have seen the witnesses while they signed. The Supreme Court held this was sufficient, since the witnesses had signed their names in such a place that the testator could see them if he chose to do so.

In *Witt v. Gardiner,* 158 Ill. 176, the court defined what is meant by the presence of a testator within the

meaning of the statute, using substantially the language "of a distinguished modern law writer," as follows:

"Contiguity, with an uninterrupted view between testator and subscribing witnesses, is the indispensable element to the physical signing in the testator's presence."

Without discussing the cases cited in detail, an examination of them discloses that the word "contiguity" in the definition is not used in any narrow or restricted sense, but rather liberally, to the end that the evident purpose of this provision of the statute to prevent fraud upon the testator may be accomplished. *Casson v. Dade,* 1 Brown's Chancery Rep. 99; *Shires v. Glascock,* 2 Salk. 688; *In re Tobin,* 196 Ill. 484; *In re Will of Porter,* 309 Ill. 220; *Wright v. Lewis,* 5 Richardson's Law Reports, (So. Car.) 212, are cases in which, under facts somewhat similar to those which here appear, the wills were admitted to probate.

The undisputed evidence here is to the effect that the attestation of the will took place within the range of view of the testatrix under such circumstances that she could have seen the act of attestation if she chose so to do. This seems under the authorities to be sufficient.

The contestant suggests undue influence by the brother, who under the terms of the will was to receive 40 per cent of the estate, but if such was the fact (a matter upon which we express no opinion), contestant was not without his remedy.

For the reasons indicated the order of the circuit court will be affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.