(No. 20586.—)

EMILIE GLOS, Appellee, *vs.* MARY A. TIMKE SCHILDBACH, Appellant.

*Opinion filed April 23, 1931.*

24

John R. O'Connor, Charles W. Hadley, and Harry G. Weaver, for appellant.

Charles S. Williston, and Samuel J. Howe, for appellee.

Mr. Chief Justice Dunn delivered the opinion of the court:

Adam S. Glos, a resident of DuPage county, died on October 14, 1927, and on November 2, 1927, his widow, Emilie Glos, filed in the county court a petition stating that he left a will which she prayed might be admitted to probate, and after a hearing on January 9, 1928, it was ordered that the instrument presented as such will be declared to be duly and sufficiently proved and authenticated as the last will of Adam S. Glos and that it be entered of record. Two of his heirs, Mary A. Timke Schildbach, a niece, and Jacob Glos, a brother, prosecuted separate appeals to the circuit court. Jacob Glos died during the pendency of his appeal in the circuit court and his appeal was dismissed. (*Glos v. Glos,* 341 Ill. 447.) On the hearing of the appeal of Mrs. Schildbach the instrument was again ordered admitted

to probate and record. Mrs. Schildbach has appealed to this court and has assigned for error, among other things, that the court erred in receiving in evidence the deposition of Otto A. Fischer, one of the witnesses to the will, and that the evidence was not sufficient to sustain the order admitting the instrument to probate and record.

The instrument purports to have been executed by Adam S. Glos on September 12, 1896, and to have been attested by two witnesses, Otto A. Fischer and William Giese, whose names appear subscribed to the following attestation clause beneath the testator's signature: "In witness whereof we Otto A. Fischer and Wm. Giese, in the presence of the said Adam S. Glos, and at his request and in the presence of each other hereby sign our respective names as witnesses to this will."

William Giese died in 1907, in the testator's lifetime. Fischer after the death of the testator was living in Beverly Hills, Los Angeles county, California, and his deposition was taken at his home there, on behalf of the proponent of the will, on May 19, 1930. He testified that he was acquainted on September 12, 1896, with Adam S. Glos, who then resided at Elmhurst, Illinois, and had been for about twenty-five years; that he signed his name to the will of Glos attached to the *dedimus* under which his deposition was taken, and William Giese signed his name also; that witness saw Glos sign the will and signed it himself at Glos' request as a witness to Glos' will. Giese also signed the will as a witness at Glos' request. Both signed the will at Glos' request and in his presence and in presence of each other, the three of them being together. Each of the three saw the other two sign the document. Glos was of sound mind and memory when he signed the document and witness then believed he was of sound mind and memory. The document was in the same condition at the time the deposition was taken as when Glos signed it. Fischer further testified on cross-examination that Emilie Glos, the testator's

widow, is his sister, and he knows that if she dies without making a will he will be entitled to share in her estate. He said in answer to a request to state in detail and in chronological order all that happened when the will was signed, including all that was said: "While I was in the store of Adam S. Glos he asked me if I would sign his will. I said I would. He went out and came back with William Giese. Then all three of us, Adam S. Glos, William Giese and myself, went into the office of Adam S. Glos, where he read the will to William Giese and myself. Adam S. Glos then signed the will in our presence, said it was his will and asked us to sign as witnesses. I then signed as witness in the presence of Adam S. Glos and William Giese. William Giese then signed as witness in the presence of Adam S. Glos and myself. Mr. Glos thanked us and we left."

Otto Giese testified that he lives in Elmhurst, Illinois. His father was William Giese. He died in 1907. He saw his father write right along and is familiar with his signature. He would recognize it if he saw it. His father's business was blacksmith. Witness helped him while he was living and learned the trade from him. He worked for him in the business. He saw him sign papers—write out bills and things like that—and saw him sign his name to checks. Witness looked at the signature, "Wm. Giese," to the document purporting to be the will of Adam S. Glos and stated that he had an opinion whose signature it was—that it was his father's signature. On cross-examination he said he was forty-four years old. At the time of his father's death he was about fifteen. He was fourteen years old when he came out of school and learned the horseshoeing trade and blacksmithing, working in his father's blacksmith shop. He always lived at home and went to the blacksmith shop every day. His father kept the books. He had one or two books. That is, when one book would fill up he would get another one to be filled. All current accounts were kept in one book from day to day. That book was kept in the house. His

father wrote in it. He had a little book in the shop and he transferred from one book to the other. When he did that work, of course, witness paid no particular attention to it. After that he had seen his father write in the book and when he marked anything down when he was in the shop. He had a desk. Witness would see him over there writing in a book. He always had a bank account in the State Bank of Elmhurst. Witness saw him write checks from time to time. He had no other employees that helped in the shop besides witness. He was all alone and had no other help. He saw his father write checks for what he would pay—his store bills in Chicago, the iron stores in Chicago. He would write those checks at home, in the house. Witness was in the house at the time he was writing out checks. He did not look over his father's shoulder. About a year after he quit school and went into the shop his father died, and he has been carrying on the business since.

The manner of execution of wills and the character and quantity of evidence required for their probate and admission to record are wholly statutory, and the statutory requirements are mandatory and must be complied with. They are found in sections 2 and 6 of the Wills act. Section 2 declares that all wills shall be in writing, signed by the testator or by some person in his presence and by his direction and attested in his presence by two or more credible witnesses, two of whom declaring on oath or affirmation before the county court that they were present and saw the testator sign the will in their presence or acknowledge it to be his act and deed and that they believed him to be of sound mind and memory at the time, shall be sufficient proof of the execution of the will to admit it to record. Section 6 provides that where one or more of the witnesses to any will shall die, be insane, be blind or remove to parts unknown to the parties concerned, it shall be lawful to admit proof of the handwriting of any such witness and such other secondary evidence as is admissible in courts of jus-

tice to establish written contracts, generally, in civil cases, and thereupon proceed to record such will as though it had been proved by such subscribing witnesses in proper person. The testimony of Fischer, the surviving witness to the will, was in compliance with the statute in every particular. Giese being dead his testimony was not available, but the proponent of the will had the right to prove his handwriting and introduce such other secondary evidence as would be admissible to establish a written contract in a civil case. This was done by the introduction of the testimony of Fischer, who saw Giese sign as a witness at the same time Fischer did, and of Otto Giese, who verified his father's signature.

The appellant objects to the sufficiency of Otto Giese's testimony to establish the genuineness of his father's signature, but the objection goes only to the weight of his testimony. His age (fifteen years) at the time of his father's death is referred to, his work with his father in the blacksmith shop for a year before his father's death, the number of times and the circumstances under which he had seen his father write and the attention which he had given to his writing. These things go only to the weight of his testimony, and certainly it cannot be said, as a matter of law, that a fifteen-year-old boy could not acquire a knowledge of his father's signature sufficient to enable him to identify it when he was forty-four years old. There is nothing to cast any suspicion on this testimony or the correctness of this opinion, and no evidence was offered to the contrary.

The law of this State is well established that to entitle a will to probate four things must concur: It must be in writing and signed by the testator or in his presence by someone by his direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator sign the will in their presence or that he acknowledged it to be his act and deed; and they must swear that they believed that he was of sound mind and memory at the time of signing or acknowledging.

In the case of *More* v. *More,* 211 Ill. 268, the execution and attestation,of the will were in the following form:

"In witness whereof I have hereunto set my hand and seal this 17th day of June, A. D. 1881.          GEORGE MORE. (L. S.)

Witnesses: Wm. Fuller, of Clinton, Illinois.
          Jas. A. Wilson, Clinton, Illinois."

Both witnesses had died before the testator. The county court admitted the instrument to probate. On appeal to the circuit court of DeWitt county an order was entered refusing probate, and upon a writ of error this order was reversed and the cause remanded to the circuit court, with directions to enter an order admitting the instrument to probate. It appeared from the evidence that the will bore the genuine signature of the testator and the genuine signatures of the witnesses; that the body of the will and the word "witnesses" were in the handwriting of the witness Fuller; that he was a lawyer who had been for many years engaged in the practice of his profession and Wilson was a well known citizen of DeWitt county who had served for several terms as county treasurer. The defendants in error contended that there was no proof that the testator was of sound mind and memory when he signed the will, or that the witnesses signed in the presence of each other or in the presence of the testator or at his request, as they contended was required by the statute to be proved. After quoting from the opinion in *Hobart* v. *Hobart,* 154 Ill. 610, that "the death of the witness merely changes the form of the proof. It permits secondary evidence to be introduced of the due attestation and execution of the will. The attestation is then to be shown, as it would be in case of deeds, by proof of the handwriting of the witness. As to him it is to be presumed that he duly attested the will in the presence of the testator," the court continued: "Out of the evidence in this case the presumption arose that the witnesses duly attested the will in the presence of the testator. If a perfect and formal attestation clause, reciting that all statu-

tory requirements had been complied with, had been signed by the attesting witnesses, the presumption of regularity and compliance with statutory requirements would have arisen and warranted the admission of the will to probate. (1 Underhill on Wills, 275, 276; 29 Am. & Eng. Ency. of Law,—1st ed.—199.) It is not indispensable, however, that the witnesses shall sign a formal clause of attestation. (*Robinson* v. *Brewster*, 140 Ill. 649.) The attestation clause may consist of a single word, as 'witness,' 'attest' or 'test,' or there may be no words at all. (*Robinson* v. *Brewster*, *supra;* 1 Redfield on Wills, 132.) In case of the death of the witnesses to a will which on the face thereof appears to have been regularly executed and is shown to bear the genuine signatures of the testator and the witnesses, compliance with the statutory requirement is to be presumed, in the absence of express recitals to that effect.—1 Jarman on Wills, pp. 219, 220."

In *Hobart* v. *Hobart*, *supra*, the attestation clause was: "Written, signed and sealed in the presence of Mordecia Tamling, Normal, McLean Co., Ill.—Betsey A. Tamling, Normal, McLean Co., Ill." The objection was made that the record did not show the testimony of the two subscribing witnesses. It was proved that one of the subscribing witnesses died before the death of the testator, and the other subscribing witness swore that the signature of that witness to the attestation of the codicil was in his handwriting. This was also proved by the testimony of two other witnesses. It was held that proof of the handwriting of the deceased witness was *prima facie* sufficient, especially where the signatures of the witnesses are attached to an attestation clause that the will or codicil was written, signed and sealed in their presence; that the death of the witness merely changed the form of proof and permitted secondary evidence to be introduced of the due attestation and execution of the will, which were then to be shown as it would be in case of deeds, by proof of the handwriting of

the witness. As to him it was said, "It is to be presumed that he duly attested the will in the presence of the testator," quoting from *Nickerson* v. *Buck,* 12 Cush. 332: "As regards this witness, if nothing appears in other parts of the evidence to control the presumption resulting from proof of his handwriting, it may be taken that as to his attestation it was properly made to the signature by the testator."

In *Robinson* v. *Brewster,* 140 Ill. 649, the execution and attestation of the will were in the following form:

"Witness my hand and seal this 7th day of May, 1877.

Attest:  
 J. S. Post,  
 E. McClellan."

          his  
      JOSEPH X ROBINSON. (Seal)  
          mark.

One of the two witnesses died before the will was offered for probate. The surviving witness testified that both were present when the testator signed the instrument and the survivor saw the testator sign it in the presence of both witnesses. The signature of the deceased witness was proved and the facts that the will itself was in his handwriting and he was present and superintended its execution. This was held sufficient to meet the requirements for the admission of the will to record and to show a concurrence of the four requisites heretofore stated which have been held necessary in order to entitle the will to probate. It was said that the two subscribing witnesses did not declare on oath that they were present and saw the testator sign the instrument in their presence because one of them died before the will was admitted to probate, but, referring to the provisions of section 6 of the Wills act that in all cases where any one of the witnesses to any will shall die it shall be lawful to admit proof of his handwriting and such other secondary evidence as is admissible in courts of justice to establish written contracts, generally, in similar cases, it was stated that by the proof the signature of the deceased witness as subscribed to the instrument was shown to be in his hand-

writing, as was the instrument itself, and that he was present and superintended its execution, and it was held that the proof required by section 6 was furnished, and under that section the will was as much entitled to probate as though the deceased witness had been present.

In *Matter of Page*, 118 Ill. 576, administration of the estate of Joseph P. Maxwell was granted to Sarah J. Maxwell, his widow, and Benjamin V. Page, no will having been discovered at the time of his death. About five years later his widow having discovered shortly before, as she alleged, that Maxwell had made a will which he left unrevoked at the time of his death, she presented her petition to the probate court of Cook county that the same might be probated, and this was done. That order was affirmed on appeal to the circuit court, and on a further appeal to the Appellate Court the latter court affirmed the judgment of the circuit court. An appeal was taken from the last judgment to the Supreme Court, where the evidence as to the due formal execution of the will was held to be complete. Mr. Tourtelotte, a member of the bar of the city of Chicago, testified that about August 1, 1876, at the request of Joseph P. Maxwell he drew a will for him, which Maxwell signed in the office of Eldridge & Tourtelotte in the presence of Tourtelotte and H. P. Fulton, who witnessed the signature of the will at Maxwell's request, and then, in Maxwell's presence and in the presence of each other, signed their names to the will as witnesses. No one else was present at the time. Maxwell was of sound mind and memory, and after the will was signed by Maxwell and the witnesses he took it away with him. Fulton died in the spring of 1877. Tourtelotte produced a copy of the will, and the judgment admitting the will to probate was affirmed.

In *Elston* v. *Montgomery*, 242 Ill. 348, the will purported to have been executed August 9, 1874. The testatrix died on May 19, 1907. Two witnesses to the will had died before her. Upon the trial of an issue made in a proceed-

ing to contest the will whether the writing was the last will of the deceased or not, the court directed the jury to return a verdict that it was her will and entered a decree dismissing the bill. Upon appeal the grounds urged for reversal were that the will was not signed by the testatrix and was not acknowledged by her in the presence of the subscribing witnesses, as required by law. Evidence was introduced by each side as to whether the signature to the will was in the handwriting of the testatrix. The court held that the statute did not require the will to be signed by the testatrix in her own hand but that it was sufficient if it were signed by another person at her direction and that she acknowledged the instrument as her act and deed. The evidence as to the genuineness of her signature was therefore immaterial, and the attesting witnesses having died, proof of the handwriting of the attesting witnesses was *prima facie* sufficient to admit the will to probate.

The appellant makes no reference in her brief to the decisions of this court which have been cited, except by her inclusion of them in the statement that some of the older decisions seem to intimate that proof of the signature of a deceased witness, where there is an incomplete attestation clause, carries with it the presumption that all statutory requirements have been complied with, but that such presumption cannot be adopted to overcome the plain requirement of the statute that two witnesses must prove that they saw the testator sign or that he acknowledged, and all intimations and dicta in former decisions on that point are overruled by the case of *Hill* v. *Chicago Title and Trust Co.* 322 Ill. 42, and she quotes the language of the court in that case on pages 49 and 50 of the report. The decisions which have been hereinbefore cited are not intimations or dicta but direct decisions on the points in issue in the cases cited that proof that the signature of a deceased witness subscribed to the instrument in question was in his handwriting was *prima facie* sufficient; that the death of the

witness merely changed the form of proof and permitted secondary evidence to be introduced of the due attestation and execution of the will, which were then to be shown, as it would be in case of deeds, by proof of the handwriting of the witness; that it was to be presumed that the witness duly attested the will in the presence of the testator and that the formal requirements of execution and attestation were complied with. The *prima facie* case is, of course, open to rebuttal, but in the absence of contradiction the will is entitled to be admitted to probate. If this were not so, the death of one attesting witness, where there were only two, would prevent the admission of the will to probate, because section 2 of the Wills act requires two witnesses declaring on oath or affirmation that they were present and saw the testator sign the will or acknowledge it to be his act and deed and that they believed him to be of sound mind and memory at the time, and if one of them were to die there could not be two to testify, and if both of them were to die there could not be one and the will would be incapable of proof. Therefore section 6 was enacted to meet this condition whenever one or both of the witnesses to a will should die, and it has always been construed to mean that the will might be proved by secondary evidence sufficient to establish written contracts generally, and the court might thereupon proceed to record the will as though it had been proved by the subscribing witnesses in his, her or their proper persons. The case of *Hill* v. *Chicago Title and Trust Co. supra,* did not overrule these cases. The fact that the legislature provided in section 6 for the admission of secondary evidence in case of the death of one or more of the attesting witnesses and the admission of the will to probate in such case as though it had been proved by the subscribing witnesses, necessarily modifies, in cases where one or more of the attesting witnesses have died, the requirement of the oath of two attesting witnesses. In the *Hill case* only one witness to the will was produced, Frank

W. Cherry, who testified that Jennings asked him to come into another room and witness his signature; that another man was there whom Cherry did not know; that no pen could be found and the stranger produced an indelible pencil; that all three signed the instrument in question with the same pencil in the presence of each other; that Jennings told them it was his will; that he had never seen the other man before and never saw him afterwards, was not introduced to him, did not know his name and could not swear to the name he signed. There was no evidence whatever as to the identity of the missing witness or what his real name was. The decision construed section 6 of the Wills act to mean that where the identity, name and residence of an attesting witness were all unknown it could not be assumed that he had removed to parts unknown or that his testimony could not be procured for other statutory reasons, so as to render secondary evidence of the execution of the will admissible. Moreover, section 2 of the Wills act has been modified by the amendment of section 13, which provides that when the probate of any will and testament shall have been allowed or refused by any county or probate court, on appeal from the order allowing or refusing probate to the circuit court the party seeking probate of the will may support it by any evidence competent to establish a will in chancery, and it has been repeatedly held that on the hearing in the circuit court on the question of the due execution of the instrument involved the question of fact presented is controlled by the same rule and presumption which control the trial of other questions of fact, and that the instrument should be admitted to record if its genuineness and due execution are established by evidence competent to establish the will in chancery. *In re Will of Porter,* 309 Ill. 220; *Norton* v. *Goodwine,* 310 id. 490.

The appellant argues that the circuit court erred in annexing to the *dedimus* to take the deposition of Otto A. Fischer, residing in California, the original will of Adam

S. Glos. The county court made an order for the clerk of the county court to deliver to the clerk of the circuit court the will for the purpose of attaching it to the *dedimus* for the purpose of taking Fischer's deposition, and the will was accordingly attached to the *dedimus* issued for that purpose. Section 18 of the Wills act provides that all original wills, together with the probate thereof, shall remain in the office of the clerk of the county court of the proper county, and copies of the record certified under the hand of the clerk shall be evidence. This section has more particular reference to the place of deposit of the will after it has been admitted to probate, but in this case the probate of the will had been appealed and the cause removed to the circuit court. It was proper for the court to order the instrument offered for probate to be transmitted to the clerk of the circuit court, and upon the issue of a *dedimus* to take the deposition of a subscribing witness it was proper for the circuit court to make an order to take the will from the files and attach it to the *dedimus*.

The appellant in her argument refers to the well established principle that evidence unlawfully procured, whether it be by confessions extorted under duress, evidence obtained by unlawful search and seizure, or otherwise in violation of law, is not competent in any proceeding, civil or criminal. But these principles have no application to this case.

The appellant contends that the case was tried and decided out of its order, in violation of the rules of the circuit court of DuPage county. The case was placed upon the calendar of the circuit court for trial, the appellant says in her brief, to be disposed of as reached upon the ordinary trial calendar of the court in its order and in accordance with the rules of the court, but that the case was set for trial and heard out of its order and contrary to the rules adopted by the court. The bill of exceptions shows that the case came on for hearing on September 19, 1930,

one of the regular judicial days of the June term, and counsel for the appellant objected to proceeding with the hearing because of the absence of C. W. Hadley, who was out of town. He relied upon rule 5 of the court, which provided that any law case might be placed on the law trial calendar at any term by trial notice, with proof of service filed with the clerk by either party at least ten days before the first day of the term and a copy thereof mailed and delivered to opposing counsel; that the clerk, at least three days before the first day of the term, should cause the trial calendar to be printed, placing thereon all cases noticed for trial in their numerical order, unless otherwise directed by the court or a judge thereof. Counsel for the appellant stated that the notice required by that rule had not been served, and the court stated that if rule 5 was not applicable to the case the court would exercise its power and would proceed under rule 19, which provides that "the court reserves the power to depart from these rules at its discretion." Notices served on the counsel for the appellant on September 5 and September 6 that the attorneys for the appellee would appear before the court on September 10 and move the court to set the cause for trial at an early day to be fixed by the court were introduced in evidence. Nothing further appears in the abstract in regard to the question. No reference is made to the condition of the docket or the advancement of the case before any other case, or to the reason of the absence of Hadley, or to his inability to be present at the time fixed for the trial by reason of the insufficiency of notice, that the time from September 10 to September 19 was so short or his engagements such that he could not reasonably and conveniently be present at the trial, or that the court was guilty of any abuse of discretion in departing from the rules, as authorized by rule 19, and setting the case for trial. The presumption is that the action of the court was proper and just. The burden of showing that it was not so was on the appellant, and

38

abuse of discretion is not shown merely by the fact that the judge chose to depart from rule 5, as authorized by rule 19, in setting the case for hearing. It does not appear that the court was guilty of any abuse of discretion or that there was any prejudice to the appellant in the setting of the case for hearing.

The order of the circuit court admitting the will to probate is affirmed.

*Order affirmed.*