**In Re Estate of Ida Marcoux, Deceased.
Edmund J. Bolio, Proponent of the Claimed Last Will and Testament of Said Deceased, Appellee, v. County of Cook, Appellant.**

**Gen. No. 36,505.**

Opinion filed October 10, 1933.

Thomas J. Courtney, State's Attorney, for appellant; Edgar B. Elder, Assistant State's Attorney, of counsel.

ARTHUR A. BASSE and HARRY A. BIOSSAT, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is the second case appealed to this court involving the estate of Ida Marcoux, deceased. She died at Chicago early in June, 1928, at the age of 68 years or older, without leaving any heirs that diligent search has discovered. She had resided in Chicago continuously since about the year 1880. Shortly after her death Percival B. Coffin, public administrator, was appointed administrator of the estate by the probate court of Cook county and he took possession of all personal property and filed an inventory. It is here stated that the value of the present net estate is in excess of $15,000. It consists of cash in bank, other personal property and certain parcels of real estate, improved or unimproved. The present appellant is the County of Cook, which appeals from an order or judgment of the circuit court, entered December 2, 1932, wherein the court after a trial *de novo,* without a jury, virtually affirmed the order of the probate court, entered May 14, 1932, admitting to probate a certain claimed last will and testament of Ida Marcoux, deceased, executed at Detroit, Michigan, on October 19, 1877 (where she then resided), which claimed will was first presented for probate in Chicago on December 8, 1930, by the proponent, Dr. Edmund J. Bolio, a resident of Detroit for most of his life, and who at the time of such presentation was of the age of about 85 years. It is here stated by counsel for the County of Cook in their printed brief that the reason of the county's contest in the probate court, the circuit court and in this court is that if the will is finally denied admission to probate the entire estate will escheat to the county because decedent died without leaving her surviving any living heir or heirs.

In the probate court the testimony of numerous witnesses produced by the respective parties was heard from time to time during the year 1931, either before an assistant judge (Caplan) or before the probate judge (Judge Horner). A transcript of all the testimony, including certain writings introduced, and also including certain testimony of the proponent in rebuttal heard before Judge Horner on November 7, 1931, was made and filed. Depositions of other witnesses were taken by the respective parties at Detroit and Pontiac, Michigan, at which opposing counsel was present and cross-examined the witnesses. The transcript of their depositions also was filed in the cause. On the record thus made, which is voluminous, there was a hearing during May, 1932, before the then acting probate judge (Judge Sesler). The testimony and writings were read or presented to and considered by him, and on May 14, 1932, the following order, signed by him, was entered:

"This day came the proponent, Edmund J. Bolio, by . . . his attorneys, the Public Administrator by . . . his attorney, and the County of Cook by . . . its attorneys, and this cause coming on to be heard upon the depositions taken and filed herein, the evidence of witnesses heard in open court and the arguments of counsel, the court . . . doth order, adjudge and decree that the will heretofore filed herein as the last will and testament of Ida Marcoux, deceased, is hereby declared proved, and said will is hereby admitted to record in open court . . . as the last will and testament of said Ida Marcoux, deceased."

From this order the County of Cook prayed and perfected its appeal to the circuit court, where on a hearing *de novo* without a jury before the Honorable Craig A. Hood, the entire record as made in the probate court was presented or read to and considered by him. No additional evidence was introduced, and

on December 2, 1932, the court adjudged that said will "is hereby declared proven and is hereby admitted to record as the last will and testament of Ida Marcoux, deceased." In apt time the County of Cook perfected the present appeal.

During the year 1877, and prior thereto, Ida Marcoux was a resident of Detroit, Michigan, living from time to time in various houses or apartments. To some she was known as Ida Cormier and to others as Ida Marcoux. For a time she had lived with one Joseph Cormier and afterward she lived with one Charles Marcoux, a captain or engineer on boats plying on the Great Lakes. Whether she ever was legally married to either is uncertain. No children were born unto her. Cormier moved away from Detroit and subsequently died. About June 1, 1877, one John C. Hechtner either committed suicide by means of a revolver or was shot in the apartment then occupied by decedent. The Detroit newspapers on the following days contained lengthy accounts of the details of the tragedy and decedent received unpleasant notoriety. At this time she had friendly relations with Edmund J. Bolio who thereafter by various acts rendered her kindly assistance in her troubles. On October 19, 1877, when the claimed will was executed, Bolio operated a drug store in Detroit. He afterward became a doctor of medicine and from 1884 until sometime in 1925, continuously practiced medicine and surgery in Detroit, when he retired from active practice because of failing eyesight. His good reputation as a druggist, a physician and surgeon and as a man, in the particular communities in which he from time to time resided, is not seriously questioned. About the year 1880, decedent, accompanied by Charles Marcoux, left Detroit and took up their residence in Chicago, where they held themselves out as husband and wife and were so considered by their friends and acquaintances

there. No children were there born unto them. At one time a nephew of Charles Marcoux lived with them. Shortly prior to 1890, both Charles Marcoux and the nephew were on a vessel on the Great Lakes and during a storm both lost their lives by the sinking of the vessel.

After Charles Marcoux's death and some time prior to 1893, one Frederick A. Matthews deserted his wife and three daughters and went to live with Ida Marcoux at her then home in Chicago. During the year 1893, Mrs. Matthews obtained a divorce from him. Thereafter Matthews continued to live with decedent until her death in June, 1928. They never were legally married. They never held themselves out to be married, and decedent retained the name of Ida Marcoux and was always so called by her friends and neighbors. No children were born unto them. During July, 1928, Matthews filed two petitions in the probate court— one to obtain possession of certain furniture, etc., and the other to obtain possession of certain currency and a Liberty Bond, claimed to be owned by him and which decedent had deposited for safe-keeping in her box in the vault of a Chicago safety deposit company. The administrator did not contest these petitions and subsequently, by order of the probate court, Matthews received the claimed property. About nine months later, on April 10, 1929, Matthews filed in the probate court another petition, in which he made claim for certain specified sums of money and also for another large sum, in substance for the "reasonable value of his services" in managing and conserving decedent's property for the period from about 1887 until her death, under "a continuing oral agreement," whereby she directed him so to do and promised him, in consideration of his services, to execute a will, bequeathing and devising to him all of her property upon her death. but which will never was executed. This peti-

tion or claim was contested by the administrator, and during November, 1929, there was a hearing in the probate court, and on November 30, 1929, the court entered an order, adjudging that Matthews recover from the administrator, out of the assets of the estate, "the sum of $36,400, which is hereby allowed as a claim of the 6th class against the estate." From the judgment the administrator perfected an appeal to the circuit court, where during March, 1930, there was a trial *de novo* without a jury during Matthews' lifetime. On March 31, 1930, the circuit court found the issues against Matthews and entered judgment against him, disallowing his said claims *in toto*. Pending his appeal to this court he, on May 23, 1930, died at the age of about 85 years, leaving him surviving his said three daughters, one of whom was Mrs. Nellie Kirby, who shortly thereafter was appointed executrix of his last will (executed after the death of Ida Marcoux), and Mrs. Kirby, as such executrix, was substituted as plaintiff or claimant in the circuit court case, and thereafter she duly perfected the appeal from said judgment of March 31, 1930. Subsequently, on May 19, 1931, this court affirmed said judgment, for reasons stated in an unpublished opinion. (*Kirby, as executrix, etc. v. Coffin, as administrator, etc.*, 262 Ill. App. 628.) Thereafter Mrs. Kirby applied to the Supreme Court for a writ of certiorari, but her application was denied (262 Ill. App. p. xiv.)

On December 8, 1930, after the circuit court had decided against the allowance of Matthews' claims against decedent's estate, Doctor Bolio presented the claimed will to the probate court, accompanied by his verified petition praying that the document be admitted to probate, etc. It appears from the testimony of two witnesses, called by the County of Cook and employed by it as investigators, and who first met Doctor Bolio in Detroit in April, 1930, that at that

time Doctor Bolio did not know that Ida Marcoux had died until so informed by them. A photostatic copy of the claimed will is contained in the present transcript. It shows on its face that it is an old document. The edges of the paper are worn and darkened by age, and in some places slightly torn. All of the writing is in pencil, including the signatures of the testatrix and the two witnesses. The document is as follows:

"Detroit, Mich.

Oct. 19th, 1877.

"I, Ida Marcoux, bing off Sound Mind, give and bequeth to Edmund J. Bolio all my belongs after my death, he bing the only tru friend who stod by me inn my recent and continud truble when the whole world seemed to be aginst me. Singned and in pres off.

(Signed) Nolton Stoddard

Charles E. Krum (Signed) Ida Marcoux."

The principal witness called by proponent as to the time and place of the execution of the instrument, as well as to the details thereof, was Thomas J. Noyes, a boy slightly over 10 years of age at that time. His testimony was given in the probate court before assistant Judge Caplan on February 10, 1931. He was there cross-examined at great length, and he gave other testimony on further cross-examination in a deposition taken in Detroit on May 28, 1931.

Some of his testimony on direct examination is as follows:

"I have lived in Detroit all my life. I will be 64 in July (1931). I have no business now. I am retired from the Detroit Fire Department, where I served 25 years. I knew Ida Marcoux. I also knew Nolton Stoddard. I did not know Charles E. Krum to speak to him. I was present at the time this instrument was executed. At the time it was signed there were present Ida Marcoux, Stoddard, Krum, Dr. Bolio and myself.

It was signed in Dr. Bolio's drug store, at 18th and Baker streets, Detroit. . . . Ida Marcoux then lived next door to the drug store. I saw her in the store frequently. I used to deliver medicines for the doctor and I also washed bottles for him. . . . Stoddard used to come into the store quite often. . . . At the time he signed the will as a witness he was about 60 years of age. . . . I should think Krum at that time was about 45. . . . Nolton Stoddard is dead years ago. I don't know whether Krum is living or dead. I heard he died in an asylum. I have known Dr. Bolio ever since I was 5 years old, I guess, and continuously up to the present time. He is now about 85 or 86 years of age . . . . This instrument is in the same condition, so far as I know, as on the day it was signed. . . . It was signed in the presence of Ida Marcoux, and she signed it in the presence of Stoddard and Krum. . . . Stoddard made it out and signed it, then Ida Marcoux signed it and then Mr. Krum. . . . They all signed in the presence of each other. I don't know what business Stoddard was engaged in at that time. . . . I know that Krum was Superintendent of the Baker street car line. Both of these men were of good moral character.''

Portions of Noyes' testimony on cross-examination are as follows:

''I was in the store at the time the will was written. I was not called in and told that a will was being executed. I knew this was a will because I was a 'nosey' kid. I saw several people standing around there and I watched what they were doing. Stoddard wrote the will first and then signed it. Ida Marcoux signed it last, I think. I wouldn't be certain. . . . The three of them got up to the show case and the doctor was behind the show case. I saw that thing made out. Stoddard did the writing. The paper was read to Mrs. Marcoux. Stoddard read it. She said

it was all right. Dr. Bolio was behind the counter. The others were outside the counter. Dr. Bolio was facing the others. I was about 5 or 6 feet from the show case. I was there when the paper was signed. If I recall right, after it was signed she folded it up and handed it to the doctor and told him to put it into the safe. I heard her say that. . . . At the time I was a good sized boy for 10 years old. . . . I was tall enough to see over that counter. . . . I knew at that time what a will was and what the purpose of it was. When I was 10 years old I was in the fourth grade in the public school. My memory is very clear as to what happened that day. . . . It is not a fact that I was born on July 16, 1871. Having examined the papers shown me I will still say that the date of my birth was July 16, 1867.''

In the probate court no attempt was made by the contestant to contradict the facts, as testified to by Noyes, as to the execution of the will, etc., except to attempt to show by certain written documents, some introduced before assistant Judge Caplan and certified copies of others attached to the depositions of certain witnesses taken in Detroit, that in all probability Noyes was not born until July 16, 1871, and, hence, was only slightly over six years of age on October 19, 1877, and too young to have observed or understood the facts as testified to. And counsel for the contestant contended, as they here contend, that Noyes' testimony tended to show that the instrument, purporting to be decedent's will, was a fraudulent one. After carefully considering the documents mentioned and noticing the many contradictions therein contained, and considering other evidence introduced by proponent, we are of the opinion that it sufficiently appears that Noyes was in fact over 10 years of age when the will was executed, that his testimony is truthful and that said will is not a forged or fraudulent one.

However, Noyes' testimony alone would not warrant the admission of the claimed will to probate. Sufficient proof under the provisions of section 6 of the Illinois Act in regard to Wills (Cahill's St. 1931, ch. 148, ¶ 6, p. 2762) should be had. It is provided in that section as follows:

"In all cases where any one or more of the witnesses of any will, testament or codicil, as aforesaid, shall die, be insane, be blind, or remove to parts unknown to the parties concerned, so that his or her testimony can not be procured, it shall be lawful for the County Court, or other court having jurisdiction of the subject matter, to admit proof of the handwriting of any such deceased, insane, blind or absent witness, as aforesaid, and such other secondary evidence as is admissible in courts of justice to establish written contracts generally in similar cases; and may thereupon proceed to record the same, as though such will, testament, or codicil had been proved by such subscribing witnesses, in his, her or their proper persons."

In the case of *Glos v. Schildbach,* 344 Ill. 23, in which an order of the circuit court admitting a will to probate was affirmed, our Supreme Court, after citing certain of its prior decisions and distinguishing the case of *Hill v. Chicago Title & Trust Co.* (322 Ill. 42), said in part, on pages 33 to 35, inclusive:

"The decisions which have been hereinbefore cited are not intimations or dicta but direct decisions on the points in issue in the cases cited that proof that the signature of a deceased witness subscribed to the instrument in question was in his handwriting was *prima facie* sufficient; that the death of the witness merely changed the form of proof and permitted secondary evidence to be introduced of the due attestation and execution of the will, which were then to be shown, as it would be in case of deeds, by proof of the handwriting of the witness; that it was to be

presumed that the witness duly attested the will in the presence of the testator and that the formal requirements of execution and attestation were complied with. The *prima facie* case is, of course, open to rebuttal, but in the absence of contradiction the will is entitled to be admitted to probate. . . . The case of *Hill v. Chicago Title & Trust Co., supra,* did not overrule these cases. The fact that the legislature provided in section 6 for the admission of secondary evidence in case of the death of one or more of the attesting witnesses and the admission of the will to probate in such case as though it had been proved by the subscribing witnesses, necessarily modifies, in cases where one or more of the attesting witnesses have died, the requirement of the oath of two attesting witnesses. . . . Moreover, section 2 of the Wills Act has been modified by the amendment of section 13, which provides that when the probate of any will and testament shall have been allowed or refused by any county or probate court, on appeal from the order allowing or refusing probate to the circuit court the party seeking probate of the will may support it by any evidence competent to establish a will in chancery, and it has been repeatedly held that on the hearing in the circuit court on the question of the due execution of the instrument involved, the question of fact presented is controlled by the same rule and presumption which control the trial of other questions of fact, and that the instrument should be admitted to record if its genuineness and due execution are established by evidence competent to establish the will in chancery. (Citing *In re Will of Porter,* 309 Ill. 220; *Norton v. Goodwine,* 310 id. 490.)''

In the probate court in the present case the proponent introduced much evidence showing that the signature of the testatrix to the instrument was her genuine signature and that the signatures of the two

subscribing witnesses (Stoddard and Krum) were their genuine signatures. The transcript of this evidence was reintroduced on the hearing in the circuit court. And the evidence introduced by the contestant in rebuttal did not directly contradict proponent's evidence on these issues, but only tended to create mere suspicions as to the genuineness of said signatures, and, generally, as to the instrument not being a bona fide one but a forged and fraudulent one. We are satisfied, after careful consideration of the entire evidence, that said signatures of the testatrix and the two witnesses are respectively genuine, and that the instrument was executed as the will of the testatrix.

The contestant also here contends, as it did in the circuit court, that while the evidence discloses that the subscribing witness (Stoddard) is dead, it does not sufficiently disclose that the other witness (Krum) is either dead or has removed "to parts unknown to the parties concerned." In our opinion, under the evidence, there is no merit in the contention. And equally without merit, in our opinion, is the contestant's further contention that the evidence does not sufficiently disclose that the Ida Marcoux, who died in Chicago in June, 1928, was the same person who as testatrix signed the instrument in question in Detroit, Michigan, on October 19, 1877.

Our conclusion is that the order or judgment of the circuit court of December 2, 1932, admitting the said will to probate, etc., as above stated, should be affirmed. It is so ordered.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.